Leib M. Lerner (CA State Bar No. 227323)
Douglas J. Harris (CA State Bar No. 322946)
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: leib.lerner@alston.com
Email: douglas.harris@alston.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Schrillo Company, LLC,<br><br>Debtor. | Case No. 1:22-bk-10444-VK<br><br>Chapter 11 (Subchapter V)<br><br>**DEBTOR'S MOTION TO SELL SUBSTANTIALLY ALL OF ITS TANGIBLE PERSONAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS; DECLARATIONS OF BRIAN D. KING AND MICHAEL FLYNN IN SUPPORT THEREOF**<br><br><u>Hearing</u><br>Date:   July 7, 2022<br>Time:   2:00 p.m.<br>Place:  ZoomGov |

LEGAL02/41739423v6

# TABLE OF CONTENTS

**Page(s)**

**GENERAL BACKGROUND** ...............................................................................................1

    A.    The Debtor's Business and Reasons for Seeking Chapter 11 Relief ...........................1

    B.    Facts in Support of Relief Requested ..........................................................................2

    C.    Summary of the Principal Terms of the APA ...............................................................4

**BASIS FOR RELIEF** ............................................................................................................7

    A.    The Debtor Has Demonstrated Sound Business Justification for the Proposed
        Sale and Terms of the APA .........................................................................................7

    B.    The Proposed Sale Satisfies the Requirements of Section 363(f) for a Sale Free
        and Clear of Liens, Claims, Interests and Other Encumbrances ..................................8

    C.    Protections of Section 363(m) ...................................................................................10

    D.    If There is a Winning Bid Other than the Stalking Horse Bidder the Assumption
        and Assignment of Assumed and Assigned Contracts Should be Authorized if
        Purchased by the Winning Bidder ..............................................................................11

    E.    Waiver of Bankruptcy Rules Regarding Stay of Order .............................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Borman's, Inc. v. Allied Supermarkets, Inc.*,
    706 F.2d 187 (6th Cir. 1983), *cert. denied*, 464 U.S. 908 (1983)............................................11

*Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*,
    722 F.2d 1063 (2d Cir. 1983)............................................................................................7

*In re 255 Park Plaza Assocs. Ltd. P'ship*,
    100 F.3d 1214 (6th Cir. 1996)..........................................................................................11

*In re Abbotts Dairies of Pennsylvania, Inc.*,
    788 F.2d 143 (3d Cir. 1986)..............................................................................................10

*In re Delaware & Hudson Ry. Co.*,
    124 B.R. 169 (D. Del. 1991)...............................................................................................8

*In re HNRC Dissolution Co.*,
    No. Civ. A. 04-158 HRW, 2005 WL 1972592 (E.D. Ky. 2005) ..............................................10

*In re Schipper (Fulton State Bank v. Schipper)*,
    933 F.2d 513 (7th Cir. 1990) ..............................................................................................7

*In re Trans World Airlines, Inc.*,
    No. 01-0056 (PJW), 2001 WL 1820325 (Bankr. D. Del. Mar. 27, 2001) ................................9

*Indiana State Police Pension Trust v. Chrysler LLC*,
    130 S. Ct. 1015 (2009), *cert. granted, judgment vacated, and remanded to dismiss appeal
    as moot*, 592 F.3d 370 (2d Cir. 2009) ....................................................................................7

*Mich. Employment Sec. Comm'n v. Wolverine Radio Co.*,
    930 F.2d 1132 (6th Cir. 1991) ............................................................................................9

*Myers v. Martin (In re Martin)*,
    91 F.3d 389 (3d Cir. 1996)..................................................................................................7

*Stephens Indus., Inc. v. McClung*,
    789 F.2d 386 (6th Cir. 1986) ..............................................................................................7

*Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*,
    75 B.R. 944 (Bankr. N.D. Ohio 1987) ..................................................................................9

**RULES**

Fed. R. Bankr. P. 2002 ..................................................................................................................1

Fed. R. Bankr. P. 6004 ..................................................................................................................1

DEBTOR'S SALE MOTION

Fed. R. Bankr. P. 6004(h) ...................................................................................................12

Fed. R. Bankr. P. 9014 .......................................................................................................1

**STATUTES**

11 U.S.C. § 105(a) ......................................................................................................1, 7, 9

11 U.S.C. § 363(b) ...............................................................................................................8

11 U.S.C. § 363(b)(1) ..........................................................................................................7

11 U.S.C. § 363(f)(2) .........................................................................................................10

11 U.S.C. § 363(f)(4) .........................................................................................................10

11 U.S.C. § 363(m) ......................................................................................................11, 12

11 U.S.C. § 365(a) .............................................................................................................11

11 U.S.C. § 365(b)(1) ...................................................................................................11, 12

11 U.S.C. § 365(f)(2) .........................................................................................................11

DEBTOR'S SALE MOTION

Schrillo Company, LLC, the debtor and debtor-in-possession in the above-captioned case (the "**Debtor**"), hereby files this motion (the "**Motion**") pursuant to sections 105(a) and 363 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), in accordance with that certain *Order Approving Debtor's Motion to Approve Sale Procedures for the Auction of Substantially All of its Assets Free and Clear of Liens, Claims and Interest* [Doc. 53] (the "**Sale Procedures Order**"), to sell substantially all of its tangible personal property free and clear of all liens, claims, encumbrances and interests, under Section 363 of the Bankruptcy Code and with the good faith protections of Section 363(m) of the Bankruptcy Code, pursuant to a definitive and binding asset purchase agreement approved by this Bankruptcy Court and to sell any and all Excluded Assets under similar customary and reasonable terms.[1]  In support of the Motion, the Debtor respectfully represents as follows:

## GENERAL BACKGROUND

1.      The Debtor filed a voluntary Subchapter V, Chapter 11 case in the United States Bankruptcy Court for the Central District of California on April 13, 2022 (the "**Petition Date**").  The case is assigned to the Honorable Victoria S. Kaufman, and bears case number 1:22-bk-10444-VK. John-Patrick McGinnis Fritz has been appointed as Subchapter V Trustee, and the Debtor remains a debtor-in-possession. *See* Declaration of Brian King ("**King Decl.**"), ¶ 3.

### A.    The Debtor's Business and Reasons for Seeking Chapter 11 Relief

2.      The Debtor specializes in precision manufacturing equipment targeting the commercial aviation, military, and space industries.  The Debtor's principal office is located in North Hills, California.  As of the Petition Date, the Debtor had 36 regular, full time employees, and currently has 33 employees. The Debtor elected to seek protection in Chapter 11 in order to pursue a prompt and efficient reorganization and sell substantially all of its assets as a going concern ("**Sale**") and, upon a successful Sale, pay its creditors in full. *Id*. at ¶ 4. The Debtor has been trying to sell its business for almost ten years, and over that time period has had a number of potential suitors. *Id*. at ¶ 5. Over the

---

[1] Capitalized terms that are not defined herein shall have the meanings ascribed to them in that certain Asset Purchase Agreement, which is attached as Exhibit A to this Motion. "Purchaser" means the Purchaser defined in the APA or the buyer identified in the successful bid in the event of an Auction, as applicable.

past few years, the Debtor's expenses have exceeded its income, and its parent Schrillo Realty, Inc. has kept the Debtor afloat through a combination of capital infusions and loans. *Id*. This past March, a potential buyer pulled out at the last minute before signing the transaction papers, after going through over a year of negotiation and due diligence. *Id*. at ¶ 6. The Debtor pivoted to the bankruptcy process in order to find a buyer and consummate a sale quickly. *Id*. By filing, Debtor's management believed that the value of the company, if sold quickly, would exceed all claims and leave equity in the money. The Debtor believes that the sale contemplated by this Motion will fulfill that goal. *Id*. at ¶ 7. In addition, the Debtor is cognizant of and concerned for its 33 employees, and is continuing to market all of its assets for sale, including to a number of parties that expressed interest in purchasing the Debtor's assets as a going concern, but whose offers to date fell short in providing the overall benefit to the Debtor's estate that the current proposed liquidator sale will accomplish. *Id*.

**B.**    **Facts in Support of Relief Requested**

3.      The Debtor worked with Riveron RTS, LLC ("**RTS**"), its financial advisor retained to market and sell the Debtor's assets, since the Petition Date. RTS's employment was approved by the Court on June 6, 2022. *Id*. at ¶ 8; Docs. 32 & 90.

4.      RTS actively reached out to industry participants and potential investors likely to be interested in buying the Debtor's assets. Additionally, the Debtor and its professionals were contacted by other potential investors that expressed an interest in potentially purchasing the Debtor's assets, and RTS followed up with each of those contacts. *See* Declaration of Michael Flynn ("**Flynn Decl.**"), ¶ 3. RTS spoke with or had correspondence with approximately 86 interested parties, received approximately 30 executed Non-Disclosure Agreements ("**NDA**"), and prompted six letters of intent or similar form of written offer, which were under management consideration for stalking horse position. RTS and Debtor management had offsite conferences with 23 potential buyers, onsite meetings and on-site tours with 13 potential buyers, and additional meetings are scheduled for after this filing. Debtor has also set up a data room, and every party that has executed an NDA has been provided access. *Id*. at ¶ 4.

5.      After extensive negotiations with multiple credible parties seeking to become the stalking horse bidder, including almost reaching agreement with two separate parties that intended to

buy the Debtor's assets as a going concern, Machinery Network Auctions, Inc. ("**MNA**") and Machinery Marketing International ("**MMI**", and together with MNA "**Purchaser**" or "**Stalking Horse Bidder**") emerged as the best party prepared to timely finalize a fair asset purchase agreement that would maximize the value of the Debtor's estate, and was selected as the Stalking Horse Bidder. The APA provides for a Purchase Price of $1,355,000 for substantially all of the Debtor's tangible personal property, provides for the consignment sale of Debtor's inventory by the Purchaser with 100% of the sales price less Buyer's Premium going to the Debtor, and provides that the Debtor retains all of its accounts receivable for the Estate's benefit, which current balance is approximately $1 million and has historically been collected at a 100% rate.  This deal has the highest probability of leading to a plan that will pay all creditors in full.  No other potential bidder has come close to Stalking Horse Bidder's offer in terms of the benefits being offered to the Debtor and the Debtor's Estate if the Sale is approved, and the simplicity of the deal closing.  The Debtor believes that selling the Assets to the Stalking Horse Bidder under the terms and conditions of the proposed sale, including the price and all contingencies, is in the best interest of the Debtor's estate.  The competitive sale process indicates that Debtor is getting the highest bid for the Assets and that the value of the assets is at least the Purchase Price.  *Id*. at ¶ 5; King Decl., ¶ 9.

6.      The Debtor's landlord, Schrillo Realty, Inc., for the premises at 16750 Schoenborn St., North Hills, CA 91343 ("**Premises**") has worked diligently with the Debtor and interested parties in order to consummate a sale of the Debtor's assets.  The landlord is accommodating the Stalking Horse Bidder in consenting to Debtor's agreeing to Purchasers having 90 days from the Closing Date to remove the assets from the premises.  The landlord has also made numerous concessions to other potential bidders in efforts to encourage both liquidation and going concern sales.  The landlord remains ready, willing and able to work with any going-concern bidder that wishes to incorporate or conjoin a lease of the Premises with its Qualified Bid.  King Decl., ¶ 10.

7.      The Stalking Horse Bidder executed the Asset Purchase Agreement (the "**APA**") in a form acceptable to the Debtor, which is attached as **<u>Exhibit A</u>** to this Motion.  King Decl., ¶ 11.

8.      The Debtor intends to continue discussions with multiple potential buyers concerning their interest in acquiring the subject assets before the Sale Hearing and Auction scheduled for July 7,

2022.  There are multiple potential "going concern" and "liquidation" interested parties that are in discussions with RTS about becoming "Qualified Bidders" for the Auction. Flynn Decl., ¶ 6; King Decl., ¶ 12.

C.    **Summary of the Principal Terms of the APA**[2]

9.    The principal terms of the APA are:

*APA, ¶ 2, quoted in its entirety:*

Asset Acquisition and Assignment. Subject to the terms contained herein, the Debtor agrees to sell, convey, assign and hypothecate on an AS IS, WHERE IS CONDITION AND WITH ALL FAULTS basis, without any representations or warranties, except as expressly set forth herein, and free and clear of any and all liens, claims, interests, and encumbrances to the fullest extent permitted under section 363(f) of the Bankruptcy Code, to the Purchasers for the consideration provided herein, any and all of the right, title and interest the Debtor and the Debtor's Estate has in the Assets, in accordance with, and with all protections afforded by, sections 363 and 365 of the Bankruptcy Code, except for the Excluded Assets and Interests (defined *infra*), as follows:

a.    Industrial equipment and office equipment identified on Schedule A hereto (the "**Equipment**") and shall include all associated manuals and tooling, rolling stock, racking and rolling cabinets, steel tables, tool room equipment, supplies and all other and various support equipment not specifically listed to whatever extent they are the tangible personal property of Debtor and in the possession of Debtor.

*APA, ¶ 3, quoted in its entirety:*

a.    Excluded Assets and Interests.  Notwithstanding anything stated in this Agreement, the following property, assets, possessions, rights and interests are expressly excluded from the Assets (the "**Excluded Assets and Interests**"), all of which will be retained by Seller:

b.    Customer tooling or fixtures (to the extent any remain onsite; which includes 1 whirling head, 1 tail stock, and 6 holders that are marked as customer owned property), employee

---

[2] The partial summary of the APA contained in this Motion is for the convenience of the reader and is not intended to change, affect, or make ambiguous any terms or conditions of the APA, which APA terms and conditions are controlling in the event of any ambiguity, inconsistency, or conflict.

personal items, fixtures, and mechanicals attendant to the building, all raw materials, works in progress (WIP) and finished parts, both of which Buyers shall offer for sale on behalf of Debtor on a commission only basis, as more fully described herein.

c.  Intellectual property (including associated good will of the Debtor's business) (the "**Intellectual Property**"), except for certain of Debtor's intellectual property that shall be licensed to Purchasers on a limited basis as set forth in Paragraph 8.

d.  Executory contracts and unexpired leases (the "**Executory Contracts**").

e.  Accounts receivable (the "**Accounts Receivable**").

f.  The Debtor's books and records, including customer lists (which, for clarification purposes only, does not include any consumer records) (the "**Books and Records**").

g.  The following leased equipment and vehicle: the Xerox WorkCentre 5335; Pitney Bowes DM125 Postage Meter; Newco Enterprises, Inc. FC-3 Coffee Brewer; Keurig K-2500 Coffee Maker; and Cadillac XT5.

h.  Customer drawings and engineering files.

i.  Any non-Debtor owned intellectual property in the possession of the Seller, including but not limited to, trademarks, service marks, marks, patents, copyrights, trade secrets, processes, and designs.

j.  Any cash-on-hand.

_APA, ¶ 5, in pertinent part:_

Consideration. As consideration for the sale, conveyance, assignment and/or hypothecation of the Assets by the Seller to the Purchasers, the Purchasers shall pay the sum of ONE MILLION THREE HUNDRED FIFTY-FIVE THOUSAND DOLLARS and zero cents ($1,355,000.00) (the "Purchase Price") as follows:

Deposit. On or before June 16, 2022, the Purchasers shall pay the sum of 10% (the "**Deposit**") of the Purchase Price via wire transfer to counsel for the Debtor, Alston & Bird LLP California IOLTA Trust Account ("**A&B Trust**"), for the benefit of Debtor:

\*\*\*

Payment shall be deemed made upon receipt. In the event this Agreement is terminated in accordance with Paragraph 10, infra, or the Purchasers are not the ultimate purchasers of the Assets, the Purchasers shall be entitled to the return of the Deposit. The Debtor shall return the Deposit no later than five (5) business days after the termination this Agreement or consummation of a sale of the Assets to an alternate purchaser.

    a.  **Residual Payment**.  On the Closing Date (defined *infra*), the Purchasers shall pay the ultimate purchase price of the Assets less the Deposit via wire transfer to the A&B Trust.

    b.  **Purchase Price Allocation**. Purchasers may elect, in their sole and absolute discretion, to allocate the Purchase Price amongst one or more of the Assets.

*APA, ¶ 8, quoted in its entirety:*

Equipment sales.

    a.  Seller shall grant to purchasers an exclusive and limited, royalty-free, license to use debtor's name, trademarks, trade names and logos for the limited purposes of advertising, marketing, and otherwise publicizing the sale of the assets by purchasers.

    b.  Buyers shall offer to sell any of the excluded property on behalf of debtor, and on debtor's own account, with 100% of all sale proceeds going to debtor with buyers keeping only the requisite buyer's premium of 18% as their only commission.

*See* King Decl., ¶ 13.

10.    The contemplated sale of the Assets is to be "free and clear" of all claims and interests, pursuant to Section 363 of the Bankruptcy Code.  The liens of Leaf Capital Funding, LLC shall be paid off through the flow of funds at closing.  Schrillo Realty, Inc. is consenting to the sale, free and clear of its lien. *Id*. at ¶ 14.

11.    Purchaser's right to purchase the Assets is subject to overbid at Auction in the event there are one or more Qualified Bidders. Any Auction would be conducted in accordance with the Sale Procedures Order and comply with the terms and conditions of the Stalking Horse APA.  *Id*. at. ¶ 15. In the event that there is an Initial Overbid by a Qualified Bidder other than the Purchaser, the APA provides that any bid by the Purchaser that matches or exceeds the Initial Overbid or any Subsequent Overbid by another Qualified Bidder, shall be deemed the highest bid.  *Id*.

12. Under the APA, if the Stalking Horse Bidder is not the successful bidder, then it will be entitled to a 3% breakup fee. *Id*. at ¶ 16.

13. The Debtor and the Purchaser have negotiated the APA at arm's length and in good faith, and the Debtor believes that the Purchaser should be entitled to the protections of Section 363(m) of the Bankruptcy Code, which is a condition of the sale. *Id*. at ¶ 17

14. There is more than adequate business justification to sell the Assets to the Purchaser subject to overbid at the Auction. The Debtor's management and advisors have concluded that, in their business judgment, based upon the Assets that are proposed to be sold, the treatment of the Excluded Assets and the terms and conditions of the APA, that the proposed sale is in the best interest of the Debtor's Estate and all parties in interest. *Id*. at ¶ 18.

## BASIS FOR RELIEF

### A.    The Debtor Has Demonstrated Sound Business Justification for the Proposed Sale and Terms of the APA

15. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

16. The Debtor's sale or use of property of the estate outside the ordinary course of business should be approved by the Bankruptcy Court because the Debtor, through the King Declaration and Flynn Declaration, has demonstrated a sound business justification for the proposed transaction. *See, e.g., Indiana State Police Pension Trust v. Chrysler LLC,* 130 S. Ct. 1015 (2009), *cert. granted, judgment vacated, and remanded to dismiss appeal as moot*, 592 F.3d 370 (2d Cir. 2009) (sale of essentially all of debtor's assets approved when there was a good business reason and only possible alternative was less recovery in immediate liquidation). *See also Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Myers v. Martin (In re Martin),* 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper (Fulton State Bank v. Schipper)*, 933 F.2d 513, 515 (7th Cir. 1990)); *Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re*

*Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del. 1991) (explaining that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to Section 363(b) of the Bankruptcy Code).

17.    Furthermore, the APA is subject to competing bids at the Auction, provided that there are other Qualified Bidders, thereby enhancing the Debtor's ability to receive the highest and best value for its assets.  Consequently, the fairness and reasonableness of the consideration to be received by the Debtor ultimately will be demonstrated by a "market check" through an auction process, which is the best means for establishing that a fair and reasonable price is being paid.

18.    Finally, all creditors and parties in interest have received, or will have received by the hearing on this Motion, adequate notice of the Sale Procedures, the Auction and the Sale Hearing, in accordance with the Sale Procedures Order.  The Debtor submits that such notice is sufficient for entry of the Sale Order and satisfies requisite notice conditions for approval of the Sale under Section 363(b) of the Bankruptcy Code.

19.    Under these circumstances, the Debtor submits that sound business reasons exist for the proposed sale of the Assets outside the ordinary course of business and before the confirmation of a Subchapter V, Chapter 11 plan.

**B.    The Proposed Sale Satisfies the Requirements of Section 363(f) for a Sale Free and Clear of Liens, Claims, Interests and Other Encumbrances**

20.    Under Section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell property free and clear of any interest in such property of an entity other than the estate only if, among other things:

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

21.     Because Section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens and interests.  *See Mich. Employment Sec. Comm'n v. Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (Section 363(f) is written in the disjunctive and a court may approve a sale "free and clear" provided at least one of the subsections of Section 363(f) of the Bankruptcy Code is met).

22.     In addition, the Debtor submits that the Assets may be sold free and clear of claims, including successor liability claims, as no Purchaser will, as a result of any action taken in connection with the purchase of the Assets: (a) be a successor to the Debtor; (b) have, *de facto* or otherwise, merged with or into the Debtor; or (c) be a continuation or substantial continuation of the Debtor or any enterprise of the Debtor.

23.     Several courts have held that, notwithstanding the use of the term "interest" in the statutory language of Section 363(f) of the Bankruptcy Code, that section grants bankruptcy courts the power to convey assets free and clear of claims. *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325, at *5 (Bankr. D. Del. Mar. 27, 2001) ("Authorizing the sale [of debtor's assets] free and clear of . . . successor liability claims achieves the purpose of [Bankruptcy Code] section 363 intended by Congress."). Other courts, concluding that Section 363(f) of the Bankruptcy Code does not empower them to convey assets free and clear of claims, have nevertheless found that Section 105(a) of the Bankruptcy Code provides such authority. *See Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (stating that the absence of specific authority to sell assets free and clear of claims poses no impediment to such a sale, as such authority is implicit in the court's equitable powers when necessary to carry out the provisions of Title 11).

24.     The Debtor submits that one or more of the subsections of Section 363(f) of the Bankruptcy Code applies to all holders of liens, claims, interests or encumbrances in or against the Assets. Such holders will be adequately protected, as follows:

        (1)     Leaf Capital Funding, LLC ("**Leaf**").  All amounts due to Leaf (approximately $160,000) shall be paid off through the flow of funds at closing.  Debtor has requested

a payoff statement from Leaf and intends to file a stipulation prior to the Closing Date

to specific the payoff amount and the subsequent release of any and all Leaf liens.

(2)    Schrillo Realty, Inc. ("**Realty**").   Realty is an insider of Debtor, and is

consenting to the sale of the Assets to Purchaser, free and clear of its lien.   This

complies with section 363(f)(2).

(3)    Other Paid Off Liens of Record.   During the sale process, Debtor discovered

three liens of record for equipment that was paid off years ago.   The Debtor has been

in contact with US Bank, which is the creditor of record on two of those liens, and US

Bank confirmed in writing on June 14, 2022 that it had filed UCC-3 terminations.   The

creditor of record on the third paid off lien is Citibank, and Debtor provided information

to Citibank on June 15, 2022 showing that such lien has been paid, and expects this lien

to be removed as well.   Therefore, pursuant to section 363(f)(4), the Assets may be sold

free and clear of these liens, claims and interests.

King Decl., ¶ 19.

**C.    Protections of Section 363(m)**

25.    The Debtor and the Purchaser have negotiated the APA at arm's length and in good

faith, and the Debtor believes that the Purchaser should be entitled to the protections of Section 363(m)

of the Bankruptcy Code.

26.    Section 363(m) of the Bankruptcy Code provides, in relevant part, that:

> The reversal or modification on appeal of an authorization under subsection (b)
> or (c) of this section of a sale or lease of property does not affect the validity of
> a sale or lease under such authorization to an entity that purchased or leased
> such property in good faith . . . .

11 U.S.C. § 363(m).

27.    Although the Bankruptcy Code does not define "good faith purchaser," courts

construing Section 363(m) have adopted the traditional equitable definition of a "good faith purchaser"

and therefore, "to be covered under the statutory protection of § 363(m), the buyers must have

purchased the property 'in good faith' and 'for value.'" *In re HNRC Dissolution Co*., No. Civ. A. 04-

158 HRW, 2005 WL 1972592, at \*4 (E.D. Ky. 2005) (citing *In re Abbotts Dairies of Pennsylvania,*

*Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)). To constitute lack of good faith, a court must find "fraud or

collusion between the purchaser and the seller or the other bidders, or that the purchaser's actions constituted an attempt to take grossly unfair advantage of other bidders." *In re 255 Park Plaza Assocs. Ltd. P'ship*, 100 F.3d 1214, 1218 (6th Cir. 1996).

28.    Accordingly, the Debtor requests that the Bankruptcy Court make a finding at the Sale Hearing that the APA was negotiated at arm's length and is entitled to the protections of Section 363(m) of the Bankruptcy Code.

**D.    If There is a Winning Bid Other than the Stalking Horse Bidder the Assumption and Assignment of Assumed and Assigned Contracts Should be Authorized if Purchased by the Winning Bidder**

29.    Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A)    the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B)    adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

30.    Under Section 365(a) of the Bankruptcy Code, a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Courts routinely approve motions to assume and assign, or reject, executory contracts or unexpired leases upon a showing that a debtor's decision to take such an action will benefit the debtor's estate and is an exercise of the debtor's sound business judgment. *See, e.g., Borman's, Inc. v. Allied Supermarkets, Inc.*, 706 F.2d 187, 189 (6th Cir. 1983), *cert. denied*, 464 U.S. 908 (1983).

31.    Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor. This subsection provides:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee

(A)    cures, or provides adequate assurance that the trustee will promptly cure, such default . . .;

(B)    compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

11

1                    (C)    provides adequate assurance of future performance under such contract
                            or lease.

2    11 U.S.C. § 365(b)(1).

3        32.    The Debtor timely filed and served the Notice of Cure Costs and Potential Assumption

4    and Assignment of Executory Contracts in Connection with Sale [Doc. 70] ("**Cure Notice**").  To date,

5    the Debtor has received one filed objection and one informal comment.  The Debtor has been in contact

6    with the creditors relative to these two objections and will be stipulating to a resolution of their

7    respective cure claims.  In addition, to the extent any additional creditors raise formal or informal

8    objections to the Cure Notice, Debtor intends to reconcile and resolve all such claims in advance of

9    the Closing Date, and to pay any legitimate cure claims upon any assumption.  King Decl., ¶20.

10   Accordingly, Debtor respectfully requests that, in the event there is a Winning Bidder that desires

11   assumption and assignment of any executory contract, such assumption and assignment be authorized

12   and approved by this Court.

13       **E.    Waiver of Bankruptcy Rules Regarding Stay of Order**

14       33.    To implement the foregoing successfully, the Debtor was granted a waiver of the

15   fourteen-day stay period under Bankruptcy Rule 6004(h) of any order approving the Sale following

16   the Auction.  Sale Procedures Motion [Doc. 35] at ¶ 38; Sale Procedures Order at ¶ 1.  Debtor

17   respectfully requests that the Sale Order likewise waive the Bankruptcy Rule 6004(h) stay.

18
     DATED:  June 16, 2022                              **ALSTON & BIRD LLP**
19

20

21                                      By:  /s/  Leib M. Lerner
                                             Leib M. Lerner
22                                          Douglas J. Harris
                                  Attorneys for Debtor, Schrillo Company, LLC
23

24

25

26

27

28

1

## DECLARATION OF BRIAN D. KING

2  I, Brian D. King, declare as follows:

3       1.    I am a Manager as well as the Treasurer and Secretary of Schrillo Company, LLC, the

4  debtor and debtor-in-possession in the above-captioned case ("**Debtor**").  I am a licensed CPA, and

5  have also served as the Debtor's outside accountant for the past 34 years.  I have personal knowledge

6  of the facts set forth in this declaration, except for those matters stated on information and belief,

7  which I believe to be true. If called as a witness, I could and would testify competently to them.

8       2.    I submit this declaration in support of the Debtor's Motion to Sell Substantially All of

9  Its Assets Free and Clear of Liens, Claims and Interests.

10       3.    The Debtor filed a voluntary Subchapter V, Chapter 11 case in the United States

11  Bankruptcy Court for the Central District of California on April 13, 2022 (the "**Petition Date**").  The

12  case is assigned to the Honorable Victoria S. Kaufman, and bears case number 1:22-bk-10444-VK.

13  John-Patrick McGinnis Fritz has been appointed as Subchapter V Trustee, and the Debtor remains a

14  debtor-in-possession.

15       4.    The Debtor specializes in precision manufacturing equipment targeting the commercial

16  aviation, military, and space industries.  The Debtor's principal office is located in North Hills,

17  California.  As of the Petition Date, the Debtor had 36 regular, full time employees, and currently has

18  33 employees. The Debtor elected to seek protection in Chapter 11 in order to pursue a prompt and

19  efficient reorganization and sell substantially all of its assets as a going concern ("**Sale**") and, upon a

20  successful Sale, pay its creditors in full.

21       5.    The Debtor has been trying to sell its business for almost ten years, and over that time

22  period has had a number of potential suitors. Over the past few years, the Debtor's expenses have

23  exceeded its income, and its parent Schrillo Realty, Inc. has kept the Debtor afloat through a

24  combination of capital infusions and loans.

25       6.    This past March, a potential buyer pulled out at the last minute before signing the

26  transaction papers, after going through over a year of negotiation and due diligence.  The Debtor

27  pivoted to the bankruptcy process in order to find a buyer and consummate a sale quickly.

28

7.      By filing, Debtor's management believed that the value of the company, if sold quickly, would exceed all claims and leave equity in the money. The Debtor believes that the sale contemplated by this Motion will fulfill this goal.  In addition, the Debtor is cognizant of and concerned for its 33 employees, and is continuing to market all of its assets for sale, including to a number of parties that expressed interest in purchasing the Debtor's assets as a going concern, but whose offers to date fell short in providing the overall benefit to the Debtor's estate that the current proposed liquidator sale will accomplish.

8.      The Debtor worked with Riveron RTS, LLC ("**RTS**"), its financial advisor retained to market and sell the Debtor's assets, since the Petition Date.  RTS's employment was approved by the Court on June 6, 2022.

9.      After extensive negotiations with multiple credible parties seeking to become the stalking horse bidder, including almost reaching agreement with two separate parties that intended to buy the Debtor's assets as a going concern, Machinery Network Auctions, Inc. ("**MNA**") and Machinery Marketing International ("**MMI**", and together with MNA "**Purchaser**" or "**Stalking Horse Bidder**") emerged as the best party prepared to timely finalize a fair asset purchase agreement that would maximize the value of the Debtor's estate, and was selected as the Stalking Horse Bidder. The APA provides for a Purchase Price of $1,355,000 for substantially all of the Debtor's tangible personal property, provides for the consignment sale of Debtor's inventory by the Purchaser with 100% of the sales price less Buyer's Premium going to the Debtor, and provides that the Debtor retains all of its accounts receivable for the Estate's benefit, which current balance is approximately $1 million and has historically been collected at a 100% rate.  This deal has the highest probability of leading to a plan that will pay all creditors in full.  No other potential bidder has come close to Stalking Horse Bidder's offer in terms of the benefits being offered to the Debtor and the Debtor's Estate if the Sale is approved, and the simplicity of the deal closing.  The Debtor believes that selling the Assets to the Stalking Horse Bidder under the terms and conditions of the proposed sale, including the price and all contingencies, is in the best interest of the Debtor's estate.  The competitive sale process indicates that Debtor is getting the highest bid for the Assets and that the value of the assets is at least the Purchase Price.

10.    The Debtor's landlord, Schrillo Realty, Inc., for the premises at 16750 Schoenborn St., North Hills, CA 91343 ("**Premises**") has worked diligently with the Debtor and interested parties in order to consummate a sale of the Debtor's assets.  The landlord is accommodating the Stalking Horse Bidder in consenting to Debtor's agreeing to Purchasers having 90 days from the Closing Date to remove the assets from the premises.  The landlord has also made numerous concessions to other potential bidders in efforts to encourage both liquidation and going concern sales.  The landlord remains ready, willing and able to work with any going-concern bidder that wishes to incorporate or conjoin a lease of the Premises with its Qualified Bid.

11.    The Stalking Horse Bidder executed the Asset Purchase Agreement (the "**APA**") in a form acceptable to the Debtor, which is attached as **Exhibit A** to this Motion.

12.    The Debtor intends to continue discussions with multiple potential buyers concerning their interest in acquiring the subject assets before the Sale Hearing and Auction scheduled for July 7, 2022.  There are multiple potential "going concern" and "liquidation" interested parties that are in discussions with RTS about becoming "Qualified Bidders" for the Auction.

13.    The principal terms of the APA are:

*APA, ¶ 2, quoted in its entirety:*

Asset Acquisition and Assignment. Subject to the terms contained herein, the Debtor agrees to sell, convey, assign and hypothecate on an AS IS, WHERE IS CONDITION AND WITH ALL FAULTS basis, without any representations or warranties, except as expressly set forth herein, and free and clear of any and all liens, claims, interests, and encumbrances to the fullest extent permitted under section 363(f) of the Bankruptcy Code, to the Purchasers for the consideration provided herein, any and all of the right, title and interest the Debtor and the Debtor's Estate has in the Assets, in accordance with, and with all protections afforded by, sections 363 and 365 of the Bankruptcy Code, except for the Excluded Assets and Interests (defined *infra*), as follows:

b.    Industrial equipment and office equipment identified on Schedule A hereto (the "Equipment") and shall include all associated manuals and tooling, rolling stock, racking and rolling cabinets, steel tables, tool room equipment, supplies and all other and various support equipment not specifically listed to whatever extent they are the tangible personal

property of Debtor and in the possession of Debtor.

*APA, ¶ 3, quoted in its entirety:*

    k.  <u>Excluded Assets and Interests</u>.  Notwithstanding anything stated in this Agreement, the following property, assets, possessions, rights and interests are expressly excluded from the Assets (the "<u>Excluded Assets and Interests</u>"), all of which will be retained by Seller:

    l.  Customer tooling or fixtures (to the extent any remain onsite; which includes 1 whirling head, 1 tail stock, and 6 holders that are marked as customer owned property), employee personal items, fixtures, and mechanicals attendant to the building, all raw materials, works in progress (WIP) and finished parts, both of which Buyers shall offer for sale on behalf of Debtor on a commission only basis, as more fully described herein.

    m.  Intellectual property (including associated good will of the Debtor's business) (the "<u>Intellectual Property</u>"), except for certain of Debtor's intellectual property that shall be licensed to Purchasers on a limited basis as set forth in Paragraph 8.

    n.  Executory contracts and unexpired leases (the "Executory Contracts").

    o.  Accounts receivable (the "<u>Accounts Receivable</u>").

    p.  The Debtor's books and records, including customer lists (which, for clarification purposes only, does not include any consumer records) (the "<u>Books and Records</u>").

    q.  The following leased equipment and vehicle: the Xerox WorkCentre 5335; Pitney Bowes DM125 Postage Meter; Newco Enterprises, Inc. FC-3 Coffee Brewer; Keurig K-2500 Coffee Maker; and Cadillac XT5.

    r.  Customer drawings and engineering files.

    s.  Any non-Debtor owned intellectual property in the possession of the Seller, including but not limited to, trademarks, service marks, marks, patents, copyrights, trade secrets, processes, and designs.

    t.  Any cash-on-hand.

*APA, ¶ 5, in pertinent part:*

    <u>Consideration</u>. As consideration for the sale, conveyance, assignment and/or hypothecation of the Assets by the Seller to the Purchasers, the Purchasers shall pay the sum of ONE MILLION THREE

HUNDRED FIFTY-FIVE THOUSAND DOLLARS and zero cents ($1,355,000.00) (the "Purchase Price") as follows:

> **Deposit.** On or before June 16, 2022, the Purchasers shall pay the sum of 10% (the "Deposit") of the Purchase Price via wire transfer to counsel for the Debtor, Alston & Bird LLP California IOLTA Trust Account ("A&B Trust"), for the benefit of Debtor:
>
> \*\*\*

Payment shall be deemed made upon receipt. In the event this Agreement is terminated in accordance with Paragraph 10, infra, or the Purchasers are not the ultimate purchasers of the Assets, the Purchasers shall be entitled to the return of the Deposit. The Debtor shall return the Deposit no later than five (5) business days after the termination of this Agreement or consummation of a sale of the Assets to an alternate purchaser.

> c.  **Residual Payment**. On the Closing Date (defined *infra),* the Purchasers shall pay the ultimate purchase price of the Assets less the Deposit via wire transfer to the A&B Trust.
>
> d.  **Purchase Price Allocation**. Purchasers may elect, in their sole and absolute discretion, to allocate the Purchase Price amongst one or more of the Assets.

*APA, ¶ 8, quoted in its entirety:*

> Equipment sales.
>
> > c.  Seller shall grant to purchasers an exclusive and limited, royalty-free, license to use debtor's name, trademarks, trade names and logos for the limited purposes of advertising, marketing, and otherwise publicizing the sale of the assets by purchasers.
> >
> > d.  Buyers shall offer to sell any of the excluded property on behalf of debtor, and on debtor's own account, with 100% of all sale proceeds going to debtor with buyers keeping only the requisite buyer's premium of 18% as their only commission.

14.  The contemplated sale of the Assets is to be "free and clear" of all claims and interests, pursuant to Section 363 of the Bankruptcy Code.  The liens of Leaf Capital Funding, LLC shall be paid off through the flow of funds at closing.  Schrillo Realty, Inc. is consenting to the sale, free and clear of its lien.

15.    Purchaser's right to purchase the Assets is subject to overbid at Auction in the event there are one or more Qualified Bidders. Any Auction would be conducted in accordance with the Sale Procedures Order and comply with the terms and conditions of the Stalking Horse APA.  In the event that there is an Initial Overbid by a Qualified Bidder other than the Purchaser, the APA provides that any bid by the Purchaser that matches or exceeds the Initial Overbid or any Subsequent Overbid by another Qualified Bidder, shall be deemed the highest bid.

16.    Under the APA, if the Stalking Horse Bidder is not the successful bidder, then it will be entitled to a 3% breakup fee.

17.    The Debtor and the Purchaser have negotiated the APA at arm's length and in good faith, and the Debtor believes that the Purchaser should be entitled to the protections of Section 363(m) of the Bankruptcy Code, which is a condition of the sale

18.    There is more than adequate business justification to sell the Assets to the Purchaser subject to overbid at the Auction. The Debtor's management and advisors have concluded that, in their business judgment, based upon the Assets that are proposed to be sold, the treatment of the Excluded Assets and the terms and conditions of the APA, that the proposed sale is in the best interest of the Debtor's Estate and all parties in interest.

19.    The Debtor submits that one or more of the subsections of Section 363(f) of the Bankruptcy Code applies to all holders of liens, claims, interests or encumbrances in or against the Assets. Such holders will be adequately protected, as follows:

(1)    Leaf Capital Funding, LLC ("**Leaf**").  All amounts due to Leaf (approximately $160,000) shall be paid off through the flow of funds at closing.  Debtor has requested a payoff statement from Leaf and intends to file a stipulation prior to the Closing Date to specific the payoff amount and the subsequent release of any and all Leaf liens.

(2)    Schrillo Realty, Inc. ("**Realty**").    Realty is an insider of Debtor, and is consenting to the sale of the Assets to Purchaser, free and clear of its lien.    This complies with section 363(f)(2).

(3)    Other Paid Off Liens of Record.  During the sale process, Debtor discovered three liens of record for equipment that was paid off years ago.  The Debtor has been

1    in contact with US Bank, which is the creditor of record on two of those liens, and US

2    Bank confirmed in writing on June 14, 2022 that it had filed UCC-3 terminations. The

3    creditor of record on the third paid off lien is Citibank, and Debtor provided information

4    to Citibank on June 15, 2022 showing that such lien has been paid, and expects this lien

5    to be removed as well. Therefore, pursuant to section 363(f)(4), the Assets may be sold

6    free and clear of these liens, claims and interests.

7        20.    I am informed and believe that the Debtor timely filed and served the Notice of Cure

8    Costs and Potential Assumption and Assignment of Executory Contracts in Connection with Sale

9    [Doc. 70] ("**Cure Notice**"). I am also informed and believe that, to date, the Debtor has received one

10   filed objection and one informal comment. The Debtor has been in contact with the creditors relative

11   to these two objections and will be stipulating to a resolution of their respective cure claims. In

12   addition, to the extent any additional creditors raise formal or informal objections to the Cure Notice,

13   Debtor intends to reconcile and resolve all such claims in advance of the Closing Date, and to pay any

14   legitimate cure claims upon any assumption.

15       I declare under penalty of perjury under the laws of the United States of America that the

16   foregoing is true and correct.

17

18   Date: June 16, 2022

19                                              Brian D. King

20

21

22

23

24

25

26

27

28

## DECLARATION OF MICHAEL FLYNN

I, Michael Flynn, declare as follows:

1.      I am a senior director of Riveron RTS LLC ("**RTS**"), proposed financial advisors for Schrillo Company, LLC, the debtor and debtor-in-possession in the above-captioned case ("**Debtor**"). I have personal knowledge of the facts set forth in this declaration, except for those matters stated on information and belief, which I believe to be true.  If called as a witness, I could and would testify competently to them.

2.      I submit this declaration in support of the Debtor's Motion to Sell Substantially All of Its Assets Free and Clear of Liens, Claims and Interests.

3.      RTS actively reached out to industry participants and potential investors likely to be interested in buying the Debtor's assets. Additionally, the Debtor and its professionals were contacted by other potential investors that expressed an interest in potentially purchasing the Debtor's assets, and RTS followed up with each of those contacts.

4.      RTS spoke with or had correspondence with approximately 86 interested parties, received approximately 30 executed Non-Disclosure Agreements ("**NDA**"), and prompted six letters of intent or similar form of written offer, which were under management consideration for stalking horse position. RTS and Debtor management had offsite conferences with 23 potential buyers, onsite meetings and on-site tours with 13 potential buyers, and additional meetings are scheduled for after this filing. Debtor has also set up a data room, and every party that has executed an NDA has been provided access.

5.      After extensive negotiations with multiple credible parties seeking to become the stalking horse bidder, including almost reaching agreement with two separate parties that intended to buy the Debtor's assets as a going concern, Machinery Network Auctions, Inc. ("**MNA**") and Machinery Marketing International ("**MMI**", and together with MNA "**Purchaser**" or "**Stalking Horse Bidder**") emerged as the best party prepared to timely finalize a fair asset purchase agreement that would maximize the value of the Debtor's estate, and was selected as the Stalking Horse Bidder. The APA provides for a Purchase Price of $1,355,000 for substantially all of the Debtor's tangible personal property, provides for the consignment sale of Debtor's inventory by the Purchaser with

100% of the sales price less Buyer's Premium going to the Debtor, and provides that the Debtor retains all of its accounts receivable for the Estate's benefit, which current balance is approximately $1 million and has historically been collected at a 100% rate.  This deal has the highest probability of leading to a plan that will pay all creditors in full.  No other potential bidder has come close to Stalking Horse Bidder's offer in terms of the benefits being offered to the Debtor and the Debtor's Estate if the Sale is approved, and the simplicity of the deal closing.  The Debtor believes that selling the Assets to the Stalking Horse Bidder under the terms and conditions of the proposed sale, including the price and all contingencies, is in the best interest of the Debtor's estate.  The competitive sale process indicates that Debtor is getting the highest bid for the Assets and that the value of the assets is at least the Purchase Price.

6.    The Debtor intends to continue discussions with multiple potential buyers concerning their interest in acquiring the subject assets before the Sale Hearing and Auction scheduled for July 7, 2022.  There are multiple potential "going concern" and "liquidation" interested parties that are in discussions with RTS about becoming "Qualified Bidders" for the Auction.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date:  June 16, 2022

_____
Michael Flynn

DEBTOR'S SALE MOTION

EXHIBIT A

Execution Version

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "Agreement") is entered into by and between Machinery Network Auctions, Inc. ("MNA") and Machinery Marketing International ("MMI", and together with MNA, the "Purchasers"), on the one hand, and Schrillo Company, LLC (the "Seller" or "Debtor"), a California limited liability company having its address of record at 16750 Schoenborn St., North Hills, CA 91343, on the other hand (collectively, the "Parties" and each, a "Party"), as of June 16, 2022, and is made with respect to the following facts:

## R E C I T A L S

A.     On April 13, 2022, Debtor filed a voluntary petition under Subchapter V of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), commencing the bankruptcy case *In re Schrillo Company, LLC*, Case No. 1:22-bk-10444-VK (the "Bankruptcy Case") in the United States Bankruptcy Court for the Central District of California, (the "Bankruptcy Court"), thereby creating an estate comprised of all legal or equitable interests of the Debtor in property as of the commencement of the Bankruptcy Case (the "Estate").

B.     On May 16, 2022, the Bankruptcy Court entered its Order Approving Debtor's Motion to Approve Sale Procedures for the Auction of Substantially all of its Assets Free and Clear of Liens, Claims and Interests [Doc. 53] ("Procedures Order"), approving Debtor's Motion to Approve Sale Procedures for the Auction of Substantially all of its Assets Free and Clear of Liens, Claims and Interests [Doc. 35] ("Procedures Motion").

C.     On June 9, 2022, the Bankruptcy Court extended the deadlines set forth in the Procedures Order.

D.     Purchasers wish to purchase, and Seller has agreed to sell, assign and transfer all of its right, title and interest in and to, substantially all of the Seller's tangible personal property (the "Assets") for the purpose of liquidating such Assets via auction or other sale proceeding.

## A G R E E M E N T

NOW, THEREFORE, in consideration of the foregoing recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties hereby agree as follows:

1.     <u>Bankruptcy Court Approval</u>. This Agreement shall not be deemed effective unless and until the Bankruptcy Court enters a final order approving this Agreement without material modification pursuant to Section 363 of the Bankruptcy Code (the "Sale Order"). The Debtor shall request Bankruptcy Court approval of this Agreement. If the Bankruptcy Court denies the motion seeking approval of this Agreement or approves this Agreement subject to material modifications, this Agreement shall be deemed null, void *ab initio,* and unenforceable, unless the Parties both agree in writing to proceed forward under this Agreement despite the material modifications. The date on which the Sale Order is entered without material modification becomes a Final Order may be referred to hereinafter as the "Effective Date." An order shall be deemed a "Final Order" fifteen (15) calendar days after its entry, unless the Sale Order provides otherwise, in which case the Sale Order governs.

2.    <u>Asset Acquisition and Assignment</u>. Subject to the terms contained herein, the Debtor agrees to sell, convey, assign and hypothecate on an AS IS, WHERE IS CONDITION AND WITH ALL FAULTS basis, without any representations or warranties, except as expressly set forth herein, and free and clear of any and all liens, claims, interests, and encumbrances to the fullest extent permitted under section 363(f) of the Bankruptcy Code, to the Purchasers for the consideration provided herein, any and all of the right, title and interest the Debtor and the Debtor's Estate has in the Assets, in accordance with, and with all protections afforded by, sections 363 and 365 of the Bankruptcy Code, except for the Excluded Assets and Interests (defined *infra*), as follows:

a.    Industrial equipment and office equipment identified on Schedule A hereto (the "<u>Equipment</u>") and shall include all associated manuals and tooling, rolling stock, racking and rolling cabinets, steel tables, tool room equipment, supplies and all other and various support equipment not specifically listed to whatever extent they are the tangible personal property of Debtor and in the possession of Debtor.

3.    <u>Excluded Assets and Interests</u>.  Notwithstanding anything stated in this Agreement, the following property, assets, possessions, rights and interests are expressly excluded from the Assets (the "<u>Excluded Assets and Interests</u>"), all of which will be retained by Seller:

a.    Customer tooling or fixtures (to the extent any remain onsite; which includes 1 whirling head, 1 tail stock, and 6 holders that are marked as customer owned property), employee personal items, fixtures, and mechanicals attendant to the building, all raw materials, works in progress (WIP) and finished parts, both of which Buyers shall offer for sale on behalf of Debtor on a commission only basis, as more fully described herein.

b.    Intellectual property (including associated good will of the Debtor's business) (the "<u>Intellectual Property</u>"), except for certain of Debtor's intellectual property that shall be licensed to Purchasers on a limited basis as set forth in Paragraph 8.

c.    Executory contracts and unexpired leases (the "Executory Contracts").

d.    Accounts receivable (the "<u>Accounts Receivable</u>").

e.    The Debtor's books and records, including customer lists (which, for clarification purposes only, does not include any consumer records) (the "<u>Books and Records</u>").

f.    The following leased equipment and vehicle: the Xerox WorkCentre 5335; Pitney Bowes DM125 Postage Meter; Newco Enterprises, Inc. FC-3 Coffee Brewer; Keurig K-2500 Coffee Maker; and Cadillac XT5.

g.    Customer drawings and engineering files.

h.    Any non-Debtor owned intellectual property in the possession of the

Execution Version

Seller, including but not limited to, trademarks, service marks, marks, patents, copyrights, trade secrets, processes, and designs.

    i.    Any cash-on-hand.

4.    Overbid and Auction. The sale of the Assets to the Purchasers pursuant to this Agreement (the "Sale") shall be subject to auction, which auction is generally referred to herein as an "Auction." The Auction shall take place in the Bankruptcy Court immediately prior to the hearing on the motion to approve this Agreement and the Sale (the "Sale Hearing") unless the Bankruptcy Court designates an alternate time and/or place for the Auction.

5.    Consideration. As consideration for the sale, conveyance, assignment and/or hypothecation of the Assets by the Seller to the Purchasers, the Purchasers shall pay the sum of ONE MILLION THREE HUNDRED FIFTY-FIVE THOUSAND DOLLARS and zero cents ($1,355,000.00) (the "Purchase Price") as follows:

> **Deposit.** On or before June 16, 2022, the Purchasers shall pay the sum of 10% (the "Deposit") of the Purchase Price via wire transfer to counsel for the Debtor, Alston & Bird LLP California IOLTA Trust Account ("A&B Trust"), for the benefit of Debtor:

> Bank Name: Wells Fargo Bank, San Francisco, CA
> Account Name: Alston & Bird LLP California IOLTA Trust Account
> Account #: 20000 4068 3595
> WIRE ABA #: 121 000 248
> ACH ABA #: 122 287 170
> Swift Code: WFBIUS6S
> Reference: Schrillo Company, LLC (MNA & MMI's Deposit)

Payment shall be deemed made upon receipt. In the event this Agreement is terminated in accordance with Paragraph 10, *infra,* or the Purchasers are not the ultimate purchasers of the Assets, the Purchasers shall be entitled to the return of the Deposit. The Debtor shall return the Deposit no later than five (5) business days after the termination of this Agreement or consummation of a sale of the Assets to an alternate purchaser.

    a.    **Residual Payment**. On the Closing Date (defined *infra),* the Purchasers shall pay the ultimate purchase price of the Assets less the Deposit via wire transfer to the A&B Trust.

    b.    **Purchase Price Allocation**. Purchasers may elect, in their sole and absolute discretion, to allocate the Purchase Price amongst one or more of the Assets.

6.    Sale Procedures. The Debtor has obtained approval of the following procedures for the Auction:

    a.    **Due Diligence and Confidentiality**. Any interested party may, at their option, execute an NDA obtainable from Riveron RTS, LLC ("RTS") and arrange for access to the data room ("Data Room") and to inspect and

review any of the Assets, including a visit to the Debtor's principal place of business, 16750 Schoenborn St., North Hills, CA 91343. Parties are encouraged to immediately contact Michael N. Flynn at RTS:

Michael N. Flynn
Michael.Flynn@riveron.com
C: 817.681.8860

b.      **Notice of Intent to Bid/Deposit**.  Any party interested in bidding on the Assets during the Auction shall submit a written notice of intent to bid along with proof of the financial ability to purchase the Assets on the same terms and timeline as in this Agreement (or such other terms as may be acceptable to Debtor in its sole and absolute discretion), and in any event no later than June 23, 2022, and provide a deposit in the amount of 10% (the "Overbid Deposit") of the party's proposed purchase price to the Debtor via wiring payment to the A&B Trust on or before June 23, 2022.

c.      **Qualified Bidder**. The Debtor shall determine in its sole and absolute discretion whether the proof of financial ability to consummate the sale is sufficient to qualify the potential bidder to participate in the Auction ("Qualified Bidder"). Only Qualified Bidders may participate during the Auction. If a potential bidder does not qualify, the bidder may object to his/her/its characterization as unqualified.

d.      **Stalking Horse Bidder**.  Any party interested in bidding on the Assets as the Stalking Horse Bidder shall submit an executed Agreement along with proof of the financial ability to purchase the Assets in accordance with the terms and timeline of this Agreement on or before June 16, 2022, and provide a deposit in the amount of 10% of the party's proposed purchase price to the Debtor via wiring payment to the A&B Trust on or before June 16, 2022, and shall otherwise comply with all material terms and conditions of this Agreement.  The Debtor shall file a notice of any Stalking Horse Bidder, the proposed purchase price and whether the Stalking Horse Bidder intends to purchase all or only part of the Assets, on or before June 16, 2022. For avoidance of doubt, the Stalking Horse Bidder shall be considered a Qualified Bidder for all purposes, provided, however, that any specific provisions hereto regarding the Stalking Horse Bidder shall supersede any general provisions regarding a Qualified Bidder.  If the Stalking Horse Bidder intends to purchase only part of the Assets, the Debtor may accept a separate Stalking Horse Bidder for other Assets, and the same terms and conditions shall apply to each Stalking Horse Bidder.

e.      **Minimum Initial Overbid/Bid Increments**. The minimum initial overbid during the Auction shall be no less than (x) FIFTY THOUSAND DOLLARS and zero cents ($50,000.00) more than the Stalking Horse Bidder proposed purchase price plus (y) the Break-up Fee (defined *infra*) (the "Initial Overbid") (if any) and, thereafter (or if there is no Stalking

Horse Bidder), each overbid shall be in increments of no less than TWENTY-FIVE THOUSAND DOLLARS and zero cents ($25,000.00) more than the immediately preceding bid.

f.  **Back-up Bidder**. If multiple bids are presented during the Auction, the highest and best bid as determined by the Debtor in its sole and absolute discretion, shall be selected as the winning bid (the "Winning Bidder"). The individual or entity that bid the next highest and best bid (the "Back-up Bid") shall be deemed to be the back-up bidder (the "Back-up Bidder"). In the event that the Winning Bidder or, if applicable, the Back-up Bidder fails to close the sale within the time allotted, the Debtor shall solely retain or be entitled to recover the Deposit or Overbid Deposit, as applicable, as liquidated damages.

g.  **Break-up Fee**. In the event that the Sale closes without the Stalking Horse Bidder acquiring the Assets, then the Stalking Horse Bidder shall be entitled to a break-up fee in the amount of 3% of the Stalking Horse Bidder's originally proposed purchase price (the "Break-up Fee").

h.  **Overbid Deposit Return**. With the exception of the deposits paid by the Winning Bidder and/or Back-up Bidder, all Overbid Deposits shall be returned no later than seven (7) days after the conclusion of the Auction. If the Winning Bidder closes on the Sale, the Back-up Bidder shall be entitled to the return of its Overbid Deposit no more than seven (7) business days after the Closing Date.

i.  **Bidding Order**. Bidding during the Auction shall begin with the highest qualified bid submitted prior to the Auction, if any. During the Auction, the Stalking Horse Bidder (if any) shall be entitled to offer the first bid in response to the Initial Overbid. Thereafter, the order for the submission of bids shall be governed by a randomly selected order by the Debtor that will be maintained for the rest of the Auction. A bidder that abstains from submitting a bid in any round of bidding waives the right to thereafter submit a bid during a later round. Bidding shall continue until a Winning Bidder and Back-up Bidder are selected.

j.  **Zoom Participation**. Any Qualified Bidder, including the Stalking Horse Bidder, who wishes to participate in the Auction must be present (whether in person or through a designated agent) via Zoom with their video camera on. No telephonic or non-video participation at the Auction will be permitted, unless otherwise ordered by the Court.

k.  **Transcription**. The Auction will be transcribed by a court reporter, or audio recorded, at the Debtor's discretion.

l.  **Open Bidding**. Except as otherwise set forth herein, the Debtor may conduct the Auction in the manner it determines will result in the highest,

best or otherwise financially superior offer(s) for the Assets.  Any such rules must provide that: (A) the procedures will be fair and open, with no participating Qualified Bidder disadvantaged in any material way as compared to any other Qualified Bidder; (B) the true identity of each Qualified Bidder will be fully disclosed to the Court and all other Qualified Bidders and all material terms of each Qualified Bid will be fully disclosed to all other bidders throughout the entire Auction; and (C) each Qualified Bidder will be permitted a fair, but limited, amount of time to respond to the previous bid at the Auction.  The Debtor requests that the Court either (i) conduct the Auction or (ii) permit counsel for Debtor to conduct the Auction in open court.

m.  **Rounds**. The Auction will continue in one or more rounds of bidding and shall conclude after each participating Qualified Bidder has had an opportunity to submit an additional bid, after being advised of the then-highest bid and the identity of the party making such next highest bid.

n.  **Higher and Better Bids**. In considering every bidder's bids, the Debtor shall take into account the Break-up Fee.

o.  **Additional Terms and/or Conditions**. The Debtor, in its sole and absolute discretion, may (a) amend and/or impose additional terms and/or conditions at or prior to the Auction that it believes will better promote the goals of the Auction and do not otherwise conflict with the terms and requirements set forth in the APA, (b) extend the deadlines set forth in the sale procedures and/or adjourn the Auction and/or the Sale Hearing in open court or on the Bankruptcy Court's calendar on the date scheduled for said hearing without further notice to creditors or parties-in-interest, and (c) withdraw the Sale at any time prior to the conclusion of the Sale Hearing.

p.  **Winning Bidder**.   The Debtor shall (i) review each bid (as and to the extent such bids were increased at the Auction) on the basis of financial and contractual terms and the factors relevant to the sale, including those factors affecting the speed and certainty of consummating the sale, and (ii) identify the highest and otherwise best offer for the Assets as the winning bid, and such entity submitting the winning bid will be the Winning Bidder.  Prior to the conclusion of the Auction, the Winning Bidder shall enter into an APA that conforms with the winning bid.  Immediately following the conclusion of the Auction, the Debtor shall request that the Court enter an order approving the Auction.

7.    Purchaser Representations and Warranties. In conjunction with the sale, the Purchasers make the following representations and warranties:

a.  MNA is a corporation formed under the laws of the State of California.  MMI is a limited liability company formed under the laws of the State of California.

The Purchasers are in good standing and is authorized to conduct business within the state of its organization.

b.    The Purchasers have obtained any and all corporate approvals necessary to execute this Agreement and consummate the Sale on the terms set forth herein.

c.    The Purchasers have sufficient funds to consummate the Sale and make all payments required under this Agreement within the time allotted for such payments.

d.    The Purchaser acknowledges that the Debtor has not guaranteed the Break-up Fee. The Purchaser further acknowledges that whether such Break-up Fee is granted rests solely within the discretion of the Bankruptcy Court and, so long as the Debtor requests such Break-up Fee, that the denial or modification of any such Break-up Fee by the Bankruptcy Court shall not constitute a breach of this Agreement by the Debtor or the Estate or cause to terminate this Agreement.

e.    The Purchasers acknowledge that the Sale transaction involves the sale, conveyance, assignment and/or hypothecation of the Estate's rights, title and interest in the Assets.

f.    The Purchasers acknowledge that they are purchasing the Assets without any representations or warranties by the Seller as to the quality, condition, or the appropriateness for any particular purpose with respect to any of the Assets.

g.    Any omission or inaccuracy of any information and/or documentation provided by the Debtor and/or any of its agents shall not result in any claim by the Purchasers for damages or cause a material breach of this Agreement. The Purchasers have not relied upon such information and documentation in deciding to proceed with the Sale; rather, the Purchasers have conducted independent due diligence regarding the Assets and have decided to proceed with the acquisition of the Assets based on the information it obtained through its independent research and analysis of the Assets.

h.    The Purchasers represent and warrant that they are not insiders of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.

8.    <u>Equipment Sales</u>.

a.    Seller shall grant to Purchasers an exclusive and limited, royalty-free, license to use Debtor's name, trademarks, trade names and logos for the limited purposes of advertising, marketing, and otherwise publicizing the sale of the Assets by Purchasers.

b.    Buyers shall offer to sell any of the Excluded Property on behalf of Debtor,

and on Debtor's own account, with 100% of all sale proceeds going to Debtor with Buyers keeping only the requisite Buyer's Premium of 18% as their only commission.

9.    <u>Closing</u>.

a.    **In General**. The closing date of the Sale shall be the first business day after the Effective Date (the "<u>Closing Date</u>"). The Parties may agree to extend the Closing Date for up to fifteen (15) days without further approval of the Bankruptcy Court. Any agreement to extend or delay the Closing Date must be set forth in writing. In no event shall the Closing Date occur more than fifteen (15) calendar days after the Effective Date.

b.    **Debtor Deliveries at Closing**. The Debtor shall deliver to the Purchasers, as applicable, such duly executed bills of sale, assignments and other instruments of assignment, transfer or conveyance, in form and substance reasonably satisfactory to the Purchasers, as the Purchasers may reasonably request or as may be otherwise necessary to evidence and effect the sale, assignment, transfer, conveyance and delivery of the Assets and to put the Purchasers in actual possession and control of the Assets (all such deliveries referred to herein as the "<u>Ancillary Agreements</u>").

c.    **Payoff of Leaf Capital Funding, LLC Liens**. Notwithstanding anything elsewhere in this Agreement, Seller shall be obligated to pay off the outstanding balance of any amounts owed to Leaf Capital Funding, LLC under the financing agreements by and between Leaf Capital Funding, LLC and the Seller, through the flow of funds at closing.

d.    **Post-Closing Covenants**.

i.    Purchasers shall have 90 days from the Closing Date to remove the Assets from the premises and shall follow any other directives as Seller may, from time-to-time, have. Upon the Closing Date, Purchasers shall have immediate, if limited, access to the Assets and shall enjoy free, unobstructed use of the premises at 16750 Schoenborn St., North Hills, CA 91343 ("<u>Premises</u>") at no additional cost to the Purchasers to prepare for and hold an auction of the Assets.  Any of the Assets not removed after 90 days from the Closing Date shall be deemed abandoned by Purchasers and all title and interest shall automatically revert to Seller without further notice, cost or rebate.

ii.    If Purchasers' or their agents' access, use or occupancy of the Premises is unreasonably impeded, delayed or interrupted for any unreasonable reason caused by Seller, Purchasers may elect, in their sole discretion, to toll the access period during the interruption or may terminate this Agreement without further obligation, penalty or

consequence;

iii.    Seller shall maintain and pay for all utilities, including but not limited to, electric, gas, water, sewer, and trash service as necessary for Purchasers' purpose at the Premises throughout the term of the Agreement.

iv.    Seller shall be responsible for providing security at the Premises for the Assets from the Closing Date through the completion of the Purchasers' auction of the Assets.

v.    Seller shall name Purchasers and Schrillo Realty, Inc. as an additional insured or loss payee under its blanket commercial general liability insurance policy from the Closing Date through the completion of the Purchasers' auction of the Assets.

vi.    Seller shall be responsible for the removal of all coolants from the Assets, if any.  Purchasers shall not be liable for the handling or removal of any hazardous substances, trash, or other debris from either the Assets or Premises.

vii.    The Parties agree as follows with respect to the period following the Closing Date: (i) If at any time after the Closing Date any further actions are necessary to carry out the purposes of this Agreement, each of the Parties shall make commercially reasonable efforts to take such further actions (including the execution and delivery of such further instruments and documents) as any other Party may reasonably request, all at the sole cost and expense of the requesting Party.

10.    <u>Termination</u>. This Agreement may be terminated by either Party hereto through the provision of written notice of termination upon the occurrence of one or more of the following events:

a.    The Bankruptcy Court fails to enter an order approving the sale within one week after the conclusion of the Auction.

b.    The Bankruptcy Court enters an order either (i) denying approval of this Agreement and the sale or (ii) approving this Agreement subject to material modifications which are not approved by the Parties in accordance with Paragraph 1 of this Agreement and/or that does not include a good faith finding pursuant to section 363(m) of the Bankruptcy Code;

c.    The Bankruptcy Court approves the sale of the Assets to a third party and, in the event the Purchasers are the Back-up Bidder, such third party consummates the acquisition of the Assets.

d.    Breach by the Purchaser in accordance with Paragraph 11.

e.        Breach by the Debtor in accordance with Paragraph 12.

11.    <u>Breach by Purchaser</u>. In the event the Purchasers fail to close the Sale or timely perform any obligation under this Agreement solely as a result of Purchasers' acts or omissions, the Purchasers and the Debtor acknowledge that it would be impractical and extremely difficult to estimate the damages the Estate will suffer as a result of such breach. Therefore, the Purchasers and the Debtor hereby agree that a reasonable estimate of the damages that the Estate would suffer in the event that the Purchasers default is and will be an amount equal to the Deposit. Such amount shall be the full, agreed upon and sole amount of monetary damages for default by the Purchasers under this Agreement, and all other claims to damages or other remedies, including, without limitation, the remedy of specific performance, being hereby expressly waived by the Debtor. This Agreement will thereupon be terminated and neither Party will have any further rights or obligations hereunder. Notwithstanding anything in this Agreement to the contrary, the Purchasers shall not be in default with respect to any of its obligations hereunder unless and until (i) the Purchasers receive written notice from the Debtor specifying such default and the means/remedies to cure such default; and (ii) the Purchasers fail to cure such default within five (5) business days from the receipt of such notice, except that no such cure period shall apply to a default by the Purchasers that is the failure to close the Sale on the Closing Date, as may be extended by the written agreement of the Parties.

12.    <u>Breach by the Debtor</u>. In the event the Debtor breaches any provision of this Agreement, the sole and exclusive remedy of the Purchasers shall be to return the Parties to the *status quo ante* through the rescission or termination of this Agreement and the return of any and all funds delivered to the Debtor by the Purchasers in conjunction with this Agreement or the proposed sale. The Purchasers shall not be entitled to pursue or obtain any further or additional monetary damages or legal or equitable remedies against the Debtor or the Estate.

13.    <u>Assignment</u>. The Purchasers may not assign this Agreement, or any rights hereunder, without the prior written consent of the Debtor. Notwithstanding the foregoing, an assignment to an entity that is owned and controlled by the Purchasers or the members of the Purchasers, and that expressly assumes in writing all of the Purchasers' obligations hereunder (a "<u>Permitted Assignee</u>"), does not require the Debtor's written consent; *provided, however,* that any Permitted Assignee, concurrently with assuming the Purchasers' obligations under this Agreement, must make in writing the same representations and warranties (adapted as required for the type of entity and state of formation or incorporation) as the Purchaser have made under this Agreement, but if such Permitted Assignee fails to expressly do so, it shall be deemed to have made such representations and warranties by executing the assignment and assumption agreement with the Purchasers and the breach of any such representations and warranties shall have the same consequences as if the Purchasers have breached such representations and warranties. The Purchasers will give the Debtor written notice of any Permitted Assignee or any other proposed assignee at least five (5) business days prior to the Closing Date, and the Purchasers shall remain liable for any monetary obligation of any Permitted Assignee. No assignment will release the Purchasers from their obligations hereunder.

14.    <u>Miscellaneous Provisions</u>.

a.        **Partial Invalidity**. If any term or provision of this Agreement or the

Execution Version

application thereof to any individual or entity or particular circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to individuals or entities or particular circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

b.     **Waivers**. No waiver of any breach of this Agreement, or any covenant or provision herein, shall be deemed a waiver of any preceding or succeeding breach thereof or of any other covenant or provision herein contained. No extension of time for performance of any obligation or act shall be deemed an extension of time for performance of any other obligation or act.

c.     **Successors and Assigns**. Subject to the limitations of Paragraph 13, *supra,* this Agreement shall be binding upon and shall inure to the benefit of the heirs, successors and assigns of the Parties hereto.

d.     **Entire Agreement**. This Agreement (including all schedules and exhibits attached hereto) is the final expression of, and contains the entire agreement between, the Parties with respect to the subject matter hereof and supersedes all prior understandings (including any so-called "term sheets" or "letters of intent") with respect thereto.

e.     **No Third-Party Benefit**. Other than as expressly set forth in Paragraph 13.c., this Agreement is for the benefit of the Parties only and is not intended to and shall not confer any rights or benefits upon any other individual or entity.

f.     **Construction**. Paragraph headings are solely for convenience, and are not a part of this Agreement. Whenever required by the context of this Agreement, the singular includes the plural, the masculine includes the feminine and the neuter, and vice versa. Unless otherwise indicated, all references to Paragraphs (and subparagraphs) are to Paragraphs (and subparagraphs) of this Agreement. All exhibits and schedules referred to in this Agreement are attached and incorporated by this reference. In the event the date on which the Purchasers or the Debtor are required to take any action under the terms of this Agreement is not a business day, the action will be taken on the next succeeding business day.

g.     **Joint Authorship**. This Agreement is the product of negotiation and preparation by and among each Party hereto, and each Party acknowledges that it has had the opportunity to consult with independent counsel of its choosing. Accordingly, this Agreement and any ambiguities or uncertainties contained herein shall be equally and fairly interpreted and construed without reference to the identity of the individual or entity preparing this Agreement on the express understanding and agreement that the Parties participated equally in the negotiation and preparation of this Agreement or have had equal opportunity to

do so. Accordingly, the Parties hereby waive the benefit of California Civil Code section 1654 and any successor or amended statute, which provides that in cases of uncertainty, language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist, and any and all similar rule(s) and/or statute(s).

h.    **Governing Law/Forum Selection**. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA WITHOUT GIVING EFFECT TO THE CHOICE OF LAWS PRINCIPLES THEREOF. By executing this Agreement, each of the Parties hereto hereby (1) irrevocably and unconditionally agrees that any legal action, suit or proceeding with respect to any matter under or arising out of or in connection with this Agreement shall be brought in the Bankruptcy Court and (2) irrevocably accepts and submits itself to the exclusive jurisdiction of the Bankruptcy Court, generally and unconditionally, with respect to any such action, suit or proceeding, and consents to the entry of any final order or judgment by the Bankruptcy Court. If the Bankruptcy Court lacks the requisite jurisdiction or authority to adjudicate any such disputes, the Parties hereto hereby consent to the jurisdiction and venue of the United States District Court for the Central District of California to resolve any such disputes.

i.    **Counterparts; Electronic Signatures**. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Copies of signatures on documents transmitted by electronic means shall be valid. A Party may change the designated recipient or address(es) for the provision of notice(s) under this Agreement by transmitting a notice of address or recipient change by the means specified in this Paragraph. Any address or recipient change shall be deemed effective upon receipt. Any notices transmitted prior to receipt of a notice of address or recipient change shall be deemed valid and effective.

**Notices to Seller:**

Schrillo Company, LLC
16750 Schoenborn St.
North Hills, CA 91343
Attn: Jeri Nowlen and Brian D. King
jnowlen@schrillo.com
brian@bkingcpa.com

With a copy to:

Alston & Bird LLP
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
Attn: Leib M. Lerner, Esq. and Douglas Harris, Esq.

Execution Version

leib.lerner@alston.com
douglas.harris@alston.com

**Notices to Purchasers:**

Machinery Network Auctions, Inc.
15910 Ventura Blvd., Suite 1410
Encino, CA 91436
Attn: Eric Raffin
eric@machinerynetwork.com

With a copy to:

Machinery Marketing International
1626 W. Lake St.
Chicago, IL  60612
Attn: Aniket Pawar
aniket@mmi-direct.com

     In witness whereof, the Parties hereto have duly executed this Agreement as of the date first written above.

**PURCHASERS**

Machinery Network Auctions, Inc.

By_____

Name: <u>Eric Raffin</u>

Title: Exec. V.P., Asset Management

Dated:_____

Machinery Marketing International

By_____

Name: <u>Aniket Pawar</u>

Title: Sr. Engineering Manager

Dated:_____

**SELLER**

Schrillo Company, LLC

By_____

Name: Jeri Nowlen

Title:    CEO

Dated: <u>6-15-22</u>

Execution Version

leib.lerner@alston.com
douglas.harris@alston.com

**Notices to Purchasers:**

Machinery Network Auctions, Inc.
15910 Ventura Blvd., Suite 1410
Encino, CA 91436
Attn: Eric Raffin
eric@machinerynetwork.com

With a copy to:

Machinery Marketing International
1626 W. Lake St.
Chicago, IL  60612
Attn: Aniket Pawar
aniket@mmi-direct.com

In witness whereof, the Parties hereto have duly executed this Agreement as of the date first written above.

**PURCHASERS**

Machinery Network Auctions, Inc.

By

Name: Eric Raffin

Title: Exec. V.P., Asset Management

Dated:    June 15, 2022

Machinery Marketing International

By

Name: Aniket Pawar

Title: Sr. Engineering Manager

Dated:    June 16, 2022

**SELLER**

Schrillo Company, LLC

By

Name:    Jeri Nowlen

Title:    CEO

Dated:

Execution Version

## SCHEDULE A

### [Equipment]

**Grinding Area**

Shigiya GSP-30 CNC Plain Cylindrical Grinder, Fanuc Powermate, 2 Axis control, gauging, New 2000
Shigiya GPS-30 CNC Plain Cylindrical Grinder, Fanuc Powermate, 2 Axis control, gauging, New 2007

Super Mic

Tschudin HTG-600 Univ Cylindrical Grinders, DRO, s/n 65200

Tschudin HTG-400 Univ Cylindrical Grinder, DRO, s/n 681158

Tschudin HT-400 Univ Cylindrical Grinder, DRO, s/n 691233

Landis 3R Plain Cylindrical Grinder, 14" x 48" CC, gauging, s/n 797-60 New approx. 1970

Excello 33 Thread Grinder, s/n 3129

J&L 16" Comparator, basic

Cincinnati Centerless grinder s/n UNK EA mdl?

Heald 72A ID Grinder, Red Head spindle – 1940's

Heald 72A ID Grinder, Red Head spindle - 1940's

Landis 4H Pl Cylindrical grinder

Rockwell Delta Drill Press

Magnaflux Magnetic Inspection Machine – 1960's

Grinding wheels, hubs, tooling, fixturing, small gauges & cabinets through-out grind area

**Small Lab**

2' x 3' Granite Surface Plate, height gauge, arbor press, Blue M oven, Small Lab hood, custom built test machines, broken arm router, shelves & benches

**Shipping Dept**

Execution Version

GMC Savana G2500, 6L V8,  Cargo Van –
New 2018

Execution Version

**Tool Grinding Room**

Christen Select O Point Drill Grinder

Deckel S1 Drill Grinder with pedestal bas

P&W Tool & Cutter Grinder

Cuttermaster Drill grinder

Cuttermaster Drill grinder

Optima Drill Grinder

Optima Drill grinder

Epilog Fiber Mark Laser 30W 24" x 12", s/n 8030-1822042241FMR, New 2018


**Precision Thread Grinding, Turning & Whirling area**

Despatch RS-1 Electric Oven 460 deg F

30" J&L Comparator, pwr stage & Quadra check DRO, New 1983

Tschudin HTG-600 Univ Cylindrical Grinder, DRO, s/n 68297

Haas VF-1 VMC, basic, s/n 1672315, New 2019

Hemburg Mikroturn 100 CNC Precision Turning Center, Siemens ctrl, collet chuck, turret, chiller, granite base, s/n 014300270-PO, New 2013

Drake GS: TI-LM 200 CNC ID Thread Grinder, Fanuc 0iMD, 5 Axis, 6 Jaw chuck, Coolant system, s/n 15677, New 2015

Drake GS: TE-LM CNC OD Thread Grinder, Fanuc 0iMD, 4 Axis, SBS balancer, coolant, s/n ?, New 2009
(2) SuperMics

Drake GS: TE-LM CNC OD Thread Grinder, Fanuc 0iMD, 4 Axis, coolant unit s/n 13578, New 2014

Leistritz PW 160.1.2000 CNC Thread Whirling Lathe, Siemens ctrl, s/n 775 5137, New 2001

Precision Lead tester

Leistritz Kalimat C34 Tool Presetter, New 2000

Super Mic

Execution Version

**Machining Area**

Fadal VMC-4020HT 4 Axis VMC, New 1988

10" or12" Matsumoto 4th axis table

Fadal VMC-40 4 Axis VMC, New 1985

6" Calmation Rotary Table

Fadal VMC-40 4 Axis VMC, New 1986

6" Fadal Rotary Table

Haas VF-4 4-Axis VMC, probing, side mount ATC 40 pos, s/n 1123382, new 2015

8" Haas rotary table

Granite surface plate w/height gauges & height master

Tree Vertical Mill, DRO, pwr feeds

Bridgeport Series I Vertical Mill

Tree 2UVR Vertical Mill, DRO pwr feed

Deckel FP1 Universal Mill

Deckel FP1 Universal Mill

Weiler Matador Tool Room Lathe

Kalamzoo Startrite 24V Vertical Band Saw

Cress Oven

Workbench with Delta DP & 3 bench grinders & arbor press

Haas VF-1, basic, New 1997

Haas Super Mini Mill, ATC, New 2008

Fadal VMC-40 4 Axis VMC, MP CNC, Rebuilt 2012

Unk Rotary table, 12" face plate

Nakamore Tome TMC-15 CNC Lathe, Fanuc 0T, hyd bar feed

Upgrade Technologies GT-27 CNC Gang Tool Lathe, Fagor ctrl, New ?

Fixturing & Tooling for VMC, mills & lathes, shelves, 5 cabinets

LEGAL02/41783857v5

**Shop floor quality/inspection area**

14" Kodak Comparator, old, basic

P&W Super Mic

P&W Super Mic

Scheer Tumico 30" Comparator, old DRO

custom Granite surface plates/table approx. 3 x 15 overall

Sunnen Air Gauge

Trimos Fowler V1000+ digital height Gage

Mitutoyo Digital height gage, older

Height Master

Mitutoyo Precision Centers

(2) Rockwell Hardness Testers, analog

Cabinets w/various gages & fixtruing

**Outside "storage"**

4 Chamber Barrel Deburrer

Vibratory Deburrer, round

Power Kleen parts washer, rotary basket type

Coolant filtration system wtih paper filter

30 HP Atlas Copco GA22VSD Rotary Screw Air Compressor, New 2007

Keltec Technolab Refrig. Air Dryer

24 HP Atlas Copco GA18FF Rotary Screw Air Compressor, New 2008

Stand Up Elect Forklift - poor condition

Yale Fork Lift , LPG, poor condition

18

**2nd Test Area**

Devin Pneumatic Arbor
Press

Milmetco Oven 500 deg F

Custom Hyd Press
Flo-Bac Part Washer

Powered gear test stand

Sundstrand Precision Centers table,
steel

**Straightening Area**

Eitel RP-25 Hyd Straighteneing Press, prec centers ficture, New
1988

Eiterl RP-16 Hyd Straightening Press, prec centers fixture, New
2001

Sunnen hone with custom long part holding fixture

Sunnen mnl stroke hone

Sunnen Pwr Stroke Hone with auto size gauge

custom chucker lathe/buffe w/6 jaw chuck

(2) Bench chuckers with collet chucks

(2) Servo Mini Drills

Unk Oven

Cantilever rack with bar stock

Hardinge DV-59 lathe - no carriage

Excello Center Lapper

Amada HFA250W Auto Horiz Band Saw, New 2012

Burr King Belt Sander

**Buffing & Deburring work areas**

(2) buffers on pedestals

Omegasonics 5038 Ultrasonic CLeaner - single chamber, approx
2 x 3

(3) Grinding, deburr & buffing sations with bench grinders

Custom EBA Gear Deburrer with cover w/dust collector

**Bar Stock Storage Area**

Rusch Horizontal Band Saw -
basic
orage shelves andracks with multi bar tock lengths and
diameters

JG Burns Bar End Camfer/Finisher Machine

**Turning Area**

1" x 48" Technidrill GD 1.00-10-1A-PLc-48-DS/CR Dual Spindle Gun Drill,
PLC control, s/n 7267-09/04, New 2004

Pratt & Whitney 16" Model C Engine Lathe 16"x50" DRO

Mori Seiki MS-1250G Gap Bed Engine Lathe, DRO

Pratt & Whitney 16" Model C Engine Lathe 16"x50" DRO

Pratt & Whitney 16" Model C Engine Lathe 16"x50" DRO

DMG Mori DT-2050 CNC Lathe, Fanuc 0i-TD, Live tool? C axis? sub? s/n
DT205131210,New 2013

Haas TL-2 CNC Flat Bed Lathe, indxing turret, s/n 6982, new 2003

Hardinge HC 2nd Op/Threading Chucker, s/n HC1873F

Hardinge AHC Auto Threading Lathe, s/n HC6195T

Hwacheon 18"x59"G Gap Bed Engine Lathe, DRO, New 1994

(3) Carbide Grinders

Snow custom tapper

Pratt & Whitney Tool & Cutter Grinder

Clausing Colchester 17C Engine Lathe w/belt grinding fixture, old

(2) Long thin granite surface plates

Nakamore Tome TMC-15 CNC Lathe, Fanuc, hyd sgl tube bar feed

Nakamore Tome TMC-15 CNC Lathe, Fanuc, CNC enhancements mag type bar feed

14" J&L comparator, OLD

Upgrade Technolgies GT-27 CNC Gang Tool Lathe, Fagor ctrl

Mori Seiki SL-3H CNC Lathe, Yansac LX1 ctrl

tooling, fixturing, cabinets and work bench thru out area


**Deburr room**


Comco Micro Abrasive blast cabinet

Multi Barrel tumbler

(2) Trinco Abrasive Blast Cabinets - shared media reclamation


**Surface Grinder Room**

Abrasive 1 1/2 Surface Grinder

Auperabrasive 1218 surface grinder

Abrasive 1 1/2 Surface Grinder

Heald Horiz Spindle Rotary Surface grinder

Abrasive 1 1/2 Surface Grinder

tooling & fixtures


**Metrology Room**

14" Scheer Tumico Comparator, Quadra Chek 200 DRO

Keyence IM-7030 Image Dimension Measuring Machine, s/n 5C910117, New approx 2019

Mitutoyo RA-2200DX Roundness Measuring Instrument, s/n 500071211, New 2012

Mitutoyo QV ELF Optical CMM

Execution Version

Mitutoyo Crysta Apex 574 DCC CMM, PH10

Mitutoyo CV-3200H4 Contour Measuring Machine, s/n 100181306, New 2013

Trimos Fowler Digital Height Gauge

Mitutoyo Surftest SJ-410

Balance of height gauges, microscopes, cabinets, hand gauges, etc,


**Assembly & Efficiency Test Area**


**EDM Area**

Agie Spirit 3 CNC Sinker EDM, 22" X, C axis, new 2006

Agie Mondo Star 20 CNC sinker EDM, Futura IV ctrl,  ATC, new approx 2002

AgieCharmilles Cut 20P Wire EDM, New 2013

Agie Agiecut120 CNC Wire EDM, New 1995

AgieCharmilles Cut 20P Wire EDM, New 2012

AgieDrill EDM Drill, New 2006

Agie Wire EDM - 1980's vintage

big arbor press

Upright MX 15 Scissor Lift

Rolling Gantry Crane w/Yale chain fall

Mori SL-3 CNC Lathe - old 2000 control

Haas TM1 4-Axis VMC, ATC + rotab, new 2005

Doosan Puma 2500LSY CNC Lathe, Fanuc 18iTB, live tool, Y axis, sub spdl, New 2006

tooling & pick-up rhu out EDM area

Execution Version

Stock & storage area near restrooms

Mezzanine storage area w/pool table & ping pong

LEGAL02/41783857v5

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 333 S. Hope Street, 16th Flr., Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled: **DEBTOR'S MOTION TO SELL SUBSTANTIALLY ALL OF ITS TANGIBLE PERSONAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS; DECLARATIONS OF BRIAN D. KING AND MICHAEL FLYNN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 6/16/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Katherine Bunker**    kate.bunker@usdoj.gov
- **Nathan E Delman**    ndelman@hmblaw.com
- **John-Patrick McGinnis Fritz (TR)**    jpftrustee@lnbyg.com, jpf@trustesolutions.net
- **Jeffrey M Goldman**    goldmanj@pepperlaw.com, allenjs@pepperlaw.com
- **Douglas Harris**    Douglas.harris@alston.com
- **Aaron Hammer**    ahammer@hmblaw.com
- **Kay S Kress**    kay.kress@troutman.com, susan.henry@troutman.com
- **Leib M Lerner**    leib.lerner@alston.com, autodockettest-lax@alston.com;Melanie.mizrahie@alston.com
- **Giovanni Orantes**    go@gobklaw.com, gorantes@orantes-law.com, cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
- **Valerie Smith**    claims@recoverycorp.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov

2. **SERVED BY UNITED STATES MAIL**:
On 6/16/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 6/16/2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Victoria S. Kaufman
United States Bankruptcy Court
Central District of California
21041 Burbank Boulevard, Suite 354/Courtroom 301
Woodland Hills, CA 91367
(Via Personal Delivery)

4. On 6/16/2022, I have provided all interested parties that have executed an NDA a copy of the foregoing document via the Data Room.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 6/16/2022 | Melanie Mizrahie | /s/ Melanie Mizrahie |
| *Date* | *Printed Name* | *Signature* |

DEBTOR'S SALE MOTION

## SERVICE LIST

5th Axis Inc
7140 Engineer Road
San Diego, CA 92111

Accurate Steel Treating
10008 Miller Way
South Gate, CA 90280

AgieCharmilles LLC
560 Bond Street
Lincolnshire, IL 60069

Airgas USA, LLC
Po Box 102289
Pasadena, CA 91189-2289

Airhardware Inc.
Dept. La 23089
Pasadena, CA 91185-3089

All Metal Processing Of Orange Coun
Po Box 102539
Pasadena, CA 91189-2539

Alliance Thread Rolling
100 East Prospect Avenue
Burbank, CA 91502

Allianz
One Progress Point Parkway, Suite 2
O Fallon, MO 63368

Alpine Bearing Company, Inc.
298 Lincoln Street
Allston, MA 02134-0003

Anthony Schrillo
1785 Voyager Avenue
Simi Valley, CA 93063

Aqui Larry
7918 Bellingham Ave
North Hollywood, CA 91605

Aselsan
296 Cadde No: 16 06200
Yenimahalle
Ankara, Turkey

AT&T
PO Box 6463
Carol Stream, IL 60197-2009

B-G Detection Service, Inc.
9235 Glenoaks Blvd.
Sun Valley, CA 91352

Barry Ave Plating Co.
2210 Barry Avenue
Los Angeles, CA 90064

BCS Insurance Co
2 Mid America Plaza, Suite 200
Villa Park, IL 60181

Blackhawk Industrial Dist, Inc
Dept #41923
Po Box 650823
Dallas, TX 75265-0823

Blue Origin
21218 76th Street
Kent, WA 98032

Bodycote - Vernon
Dept. 9692
Los Angeles, CA 90084-9692

Bodycote Thermal Processing
Po Box 201745
Dallas, TX 75320-1745

Boeing Distribution
Po Box 842267
Dallas, TX 75284-2267

Bosch Rexroth Corporation
5150 Prairie Stone Parkway
Hoffman Estates, IL 60192-3707

Boston Centerless
11 Presidential Way
Woburn, MA 01801

Brian D. King CPA, INC.
12309 Mclennan Avenue
Granada Hills, CA 91344

Business Card
Po Box 15796
Wilmington, DE 19886-5796

Cal-Labs
14747 Artesia Blvd #4g
La Mirada, CA 90638

Cartagena Alan
12250 Peoria Street
Sun Valley, CA 91352

Cartagena Elmer
2038 Avenida Refugio Apt #1
Simi Valley, CA 93063

CEF Industries, LLC
320 S. Church Street
Addison, IL 60101

Cerpa Ernie
7549 Freestone Ln
Littlerock, CA 93543

Cerpa Steve
16052 Acre St
North Hills, CA 91343

CGI Inc
3400 Arrowhead Drive
Carson City, NV 89706

Chapetta Irene
11736 Brussels Ave
Sylmar, CA 91342

Christensen William
29026 St Tropez Pl
Castaic, CA 91384

Chubb
PO Box 382001
Pittsburgh, PA 15250-8001

City of Los Angeles
Office Of Finance
Po Box 51112
Los Angeles, CA 90051-5412

City of Los Angeles
False Alarms
Po Box 30879
Los Angeles, CA 90030-0879

City of LOs Angeles
Public Works/Sanitation
Po Box 3074
Los Angeles, CA 90030-0749

Clarke Engineering, Inc.
8058 Lankershim Blvd.
North Hollywood, CA 91605

Collins Aerospace
Simonds Precision Products
100 Panton Road
Vergennes, VT 05491-1008

Contract Manufacturing
571 Searls Avenue Suite D
Nevada City, CA 95959

Cook Induction Heating
PO Box 430
Maywood, CA 90270

CPI Solutions
5999 Ridgeview St Unit A
Camarillo, CA 93012

CSM H&W Trust Fund
Risk Program Administration
333 E Osborn Road.
Phoenix, AZ 85012

Culligan Of Sylmar
Po Box 2903
Wichita, KS 67201-2903

Curtiss-Wright
18400 West 77th Street
Chanhassen, MN 55317

Cutter Inovations LLC
5000 Robb St Bldg 2/B
Wheat Ridge, CO 80033

D & K Industries, Inc.
10135 Canoga Ave
Chatsworth, CA 91311

Danobat Inc
1914 S. Houston Ave.
Humble, TX 77396

De La Cruz Carias Marvin
7055 Lennox Ave #361
Van Nuys, CA 91405

De Lage Landen Financial Svcs
Po Box 41602
Philadelphia, PA 19101-1602

De Lange Landen Financial Services
Po Box 41602
Philadelphia, PA 19101-1602

DGI Supply - A DoAll Company
1480 S Wolf Rd
Wheeling, IL 60090

Diaz Gerardo
8024 Woodman Ave #7
Panorama City, CA 91402

Dmark
10552 Humbolt St
Los Alamitos, CA 90720

Doimak S.A.
Pol Ind San Lorenzo 4
20870 Elgoibar Spain

DRAKE Manufacturing LLC
4371 N Leavitt Rd
Warren, OH 44485

DRS Network & Imaging System LLC
100 North   Babcock Street
Melbourne, FL 32935

Eaton Aerospace LLC
3675 Patterson Ave S.E.
Grand Rapids, MI 49512

ECi Software Solutions, Inc.
Po Box 200164
Pittsburgh, PA 15251-0164

Eisenreich Greg
4207 Carlotta St
Simi Valley, CA 93063

Elcan Optical Technologies
A Division of Raytheon Canada Limi
450 Leitz Rd
Midland ON L4R 5B8 Canada

Electrolurgy, Inc.
1121 Duryea Avenue
Irvine, CA 92614

Embee Processing, LLC
Po Box 102540
Pasadena, CA 91189-2540

Employment Development Department
Bankruptcy Group MIC 92E
PO Box 826880
Sacramento, CA 94280-0001

Enviro-Tech Industries
415 N Maple Grove Rd
Boise, ID 83704

Escacenas Camilo
10050 Woodley Avenue
North Hills, CA 91343

First Choice Services
18840 Parthenia St
Northridge, CA 91324

First Insurance
PO Box 7000
Carol Stream, IL 60197-7000

FLores Armando
1416 N Buena Vista St
Burbank, CA 91505

Franchise Tax Board
Bankruptcy Section, MS A340
PO Box 2952
Sacramento, CA 95812-2952

Fry Steel Co
Po Box 841483
Los Angeles, CA 90084-1483

Futek
Po Box 844891
Los Angeles, CA 90084-4891

G&B Air Conditioning
14641 1/2 Titus St
Panorama City, CA 91402-4922

Galan Straightening Co
7318 Deering Ave
Canoga Park, CA 91303

Gallagher Insurance
21820 Burbank Blvd No 175
Woodland Hills, CA 91367

Galvez Jose
13933 Terra Bella St
Pacoima, CA 91331

General Atomics Aeronautical System
14115 Stowe Dr. Poway
Poway, CA 92064

Geraldine Louise Nowlen
17346 Hasted Street
Northridge, CA 91325

Global Services
20701 Plummer Street
Chatsworth, CA 91311

GM Financial Leasing
Po Box 78143
Phoenix, AZ 85062-8143

Golden Bear
1550 W Fremont St
Stockton, CA 95203

Gomez Tony
38041 Lido Dr
Palmdale, CA 93552

Goodrich Actuation Systems Ltd
100 Panton Road
Vergennes, VT 05491

Goodrich Actuation Systems SAS
106 Rue Fourny
78530 BUC France

Goodrich Corporation
Collins Aerospace
100 Panton Road
Vergennes, VT 05491

Guzman Pedro
311 S Witmer St #106
Los Angeles, CA 90017

Hardinge Inc
Po Box 392768
Pittsburgh, PA 15251-9754

Harris Alexander
1231 Larkspur Street
Simi Valley, CA 93063

Hartford
PO Box 660916
Dallas, TX 75266-0916

Hermle
5100 West Franklin Drive
Franklin, WI 53131

Hixson Metal Finishing
829 Production Place
Newport Beach, CA 92663-2809

Home Depot Credit Services
Dept32 - 2007563699
Po Box 9001030
Louisville, KY 40290-1030

Honeybee Robotics
**1830 Lefthand Circle**
**Longmont, CO 80501**

Honeywell International, Inc.
1300 W. Warner Rd. Tempe
Tempe, AZ 85284

HR Textron Prorietary
25200 W Rye Cayon Road
Valencia, CA 91355

Infinity Machine Tools Sales Inc.
5580 E La Palma Avenue
Anaheim, CA 92807

Ingenium Aerospace LLC
5389 International Drive
Rockford, IL 61109

Internal Revenue Service (IRS)
PO Box 7346
Philadelphia, PA 19101-7346

Israel Aerospace Industries (IAI)
13873 Park Center Rd 400N
Herndon, VA 20171

Johnson Controls Fire Protection Lp
Dept Ch 10320
Palatine, IL 60055-0320

Johnson Michael
26011 Cayman Pl
Santa Clarita, CA 91350

Kinetic Arts & Technology
9540 Highway 150
Greenville, IN 47124-1000

King Bruce
4026 Madison Street
Ventura, CA 93003

King Jason
10650 Sherman Grove #9
Sunland, CA 91040

Kitch Engineering Inc.
12320 Montague St.
Pacoima, CA 91331

Kitco Defense
1625 North 1100 West
Springville, UT 84663

Kollmorgen
201 West Rock Rd
Radford, VA 24141

Kovatch Castings
3743 Tabs Drive
Uniontown, OH 44685

L&S Compressed Air Inc.
4233 N. Shadydale Ave.
Covina, CA 91722

LADWP
PO Box 51111
Los Angeles, CA 90051

Landsberg La Valley
Po Box 101144
Pasadena, CA 91189-1144

Langenkamp Luke
4160 Lockland Place Apt D
Los Angeles, CA 90008

Lara Martha
37023 32nd St E
Palmdale, CA 93550

Leaf Capital Funding
Po Box 5066
Hartford, CT 06102-5066

Leistritz Advanced Technologies C
Po Box 101144
Pasadena, CA 91189-1144

Lightlaw, Inc., A Professional Co
Dba Light Gabler
760 Paseo Camarillo
Camarillo, CA 93010

Lomeli Enrique
8412 Hillview Ave
Canoga Park, CA 91304

Los Angeles County Tax Collector
PO Box 54110
Los Angeles, CA 90054-0110

Maldonado Victor
822 Erringer Rd
Simi Valley, CA 93065

MAR Engineering
7350 Greenbush Avenue
North Hollywood, CA 91605

Marotta Controls, Inc.
78 Boonton Avenue
Montville, NJ 07045

Matsushita Paul
1036 N Workman St
San Fernando, CA 91340

McMaster-Carr Supply
Po Box 7690
Chicago, IL 60680-7690

Meggitt Control Systems
1785 Voyager Avenue
Simi Valley, CA 93063

Meridian Systems Supply
2366 N. Glassell Ave., Ste B
Orange, CA 92865

Metals Technology, Inc.
19801 Nordhoff Street
Northridge, CA 91324

Method Machine Tools
65 Union Avenue
Sudbury, MA 01776-0003

Microtecnica SRL
Collins Aerospace
Piazza Arturo Graf 147
10126 Torino Italy

Midwest Thermal Vac
5727 95th Ave.
Kenosha, WI 53144

Mistequay
1156 N. Niagara Street
Saginaw, MI 48602

Mistequay Group, LTD
1156 N. Niagara Street
Saginaw, MI 48602

Mitee Bite
340 Route 16B
Center Ossipee, NH 03814

Monce Roberto
27364 Riverside Lane
Valencia, CA 91354

Moog Inc
2268 South 3270 West
Salt Lake City, UT 84119

MSC Industrial Supply Co.
Po Box 953635
Saint Louis, MO 63195-3635

Multichrome
1013 West Hillcrest Blvd
Inglewood, CA 90301

Murillo Jose
38562 Yucca Tree St
Palmdale, CA 93551

Murillo Manuel
13961 Olive Grove Ln
Sylmar, CA 91342

Murillo, Daniel
8940 Topanga Cyn Bl #203
Canoga Park, CA 91304

Nammo Talley Inc
4051 N Higley Rd
Mesa, AZ 85215

Navarro Jose
7505 Wilbur Ave
Reseda, CA 91335

Nelson Engineering, Inc.
11600 Monarch Street
Garden Grove, CA 92841

Northrup Grumman Innovation Systems
3643 Doolittle Dr
Redondo Beach, CA 90278

Novatronics, Inc.
Wright Controls Integrated Sensing
677 Erie Street
Stratford Ontario N5A6V6 Canada

Nowlen Jeri
17346 Halsted St
Northridge, CA 91325

NTMA
1357 Rockside Road
Cleveland, OH 44134

Oerlikon Balzers Usa, Inc.
27228 Network Place
Chicago, IL 60673-1272

Ontic Engineering & Manufacturing
20400 Plummer Street
Chatsworth, CA 91311

Orbital ATK    Missile Systems Group
Alliant Techsystems Operations LLC
55 Thiokol Road
Elkton, MD 21921

Orozco Geovanni
6742 Clybourn Ave., Apt 128
North Hollywood, CA 91606

Pacific Magnetic
6837 Farmdale Ave
North Hollywood, CA 91605-6292

Parker Hannifin Corporation
Control Systems Division
2010 Waldrep Industrial Blvd.
Dublin, GA 31021

Patriot Environmental Services Inc
Po Box 1091
Long Beach, CA 90801-1091

Paylocity
1400 American Lane
Schaumburg, IL 60173

Peter Jozsef
7742 Garden Grove Ave
Reseda, CA 91335

Phillips 66 Co
Po Box 530970
Atlanta, GA 30353-0970

Pitney Bowes Global Fianancial Serv
Po Box 371887
Pittsburgh, PA 15250-7887

Planit Solutions, Inc.
3800 Palisades Drive
Tuscaloosa, AL 35405

PM Industrial Supply Co.
9613 Canoga Ave
Chatsworth, CA 91311-4197

Ponam Precision Gages
439 W Acacia Ave
Glendale, CA 91204

Productive Concepts
50825 Grand Traverse
La Quinta, CA 92253

Progressive Alloy Steels Unlimite
Po Box 8266
Pasadena, CA 91109-8266

Prudential Overall Supply
Po Box 11210
Santa Ana, CA 92711-1210

Quality Heat Treating, Inc
3305 Burton Avenue
Burbank, CA 91504

Raytheon ELCAN Optical Technologies
870 Winter Street
Waltham, MA 02451

Raytheon Missile Systems
1151 E. Hermans Rd.
Tucson, AZ 85756

Raytheon Space & Airborne
1100 Wilson Blvd
Arlington, VA 22209

Rivera Monica
28046 Ermine Pl
Canyon Country, CA 91351

Roberto Jaime
6219 Reseda Blvd #31
Reseda, CA 91335

Rockwell Collins, Inc.
400 Collins Road NE
Cedar Rapids, IA 52498

Rodriguez Francisco
40116 Villa Moura Dr
Palmdale, CA 93551

Roy & Val Tool Grinding
10131 Canoga Ave
Chatsworth, CA 91311

S&B Thread Rolling Inc
600 Arroyo Ave
San Fernando, CA 91340

SAI Global
789 Erie Street
Stratford, Ontario, N4Z 1A1, Canada

Salvino Randy
9950 Zelzah Ave Apt 203
Northridge, CA 91325

Schrillo Realty, Inc.
16750 Schoenborn Street
North Hills, CA 91343

Scicon
27525 Newhall Ranch Road
Valencia, CA 91355

Scientific Cutting Tools
220 W Los Angeles Avenue
Simi Valley, CA 93065

Scottsdale
8877 North Gainey Center Dr
Scottsdale, AZ 85258

Shah Imran
6524 Wilbur Ave #104
Reseda, CA 91335

Shape-Master Tool Company
801 W Main St
Kirkland, IL 60146

Sierra Nevada Corp
444 Salomon Circle
Sparks, NV 89434-9651

Skurka Aerospace, Inc.
4600 Calle Bolero
Camarillo, CA 93012

So Cal Office Technologies
5700 Warland Drive
Cypress, CA 90630

SoCal Gas
Centralized Correspondence
PO Box 1626
Monterey Park, CA 91754

Sparkletts
Po Box 660579
Dallas, TX 75266-0579

Staple Business Credit
Po Box 105638
Atlanta, GA 30348-5638

Stark Aerospace
319 Charleigh D. Ford, Jr. Drive
Columbus, MS 39701

STD Precision Gear
318 Manley Street
West Bridgewater, MA 02379

Sullivan Steel Services
85 NJ-31, Pennington
Pennington, NJ 08534

Sumitomo
1001 E. Business Center Drive
Mount Prospect, IL 60056

Technical Associated Services
7832 Franklin Dr.
Huntington Beach, CA 92648

Thomson Abek LLC
492 Birch Street
Bristol, CT 06010

Thomson Linear
1300 N State Street
Marengo, IL 60152

Titanium Industries, Inc.
Po Box 854113
Minneapolis, MN 55485-4113

TPX Communications
Po Box 509013
San Diego, CA 92150-9013

Trelleborg Inc.
200 N. Sepulveda Blvd Suite 1605
El Segundo, CA 90245

Triumph Actuation and Motion
Control System, UK Limited
22922 NE Alder Crest Dr
Redmond, WA 98053

Triumph Aerospace Systems Seattle
Non-Disclosure Agreement
22922 NE Alder Crest Dr
Redmond, WA 98053

Triumph Gear Systems
22922 NE Alder Crest Dr
Redmond, WA 98053

Triumph Group
22922 NE Alder Crest Dr
Redmond, WA 98053

Triumph Valencia
28150 Harrison Pkwy
Valencia, CA 91355

United Parcel Service
28013 Network Pl
Chicago, IL 60673-1280

Up & Running CNC Consulting
1212 W Ash Avenue
Fullerton, CA 92833

US Securities Exchange Commission
Attn Bankruptcy Counsel
444 S Flower Street Suite 900
Los Angeles, CA 90071-9591

Vaca Mario
14532 Birchwood Ct
Sylmar, CA 91342

Valdivieso Willy
6321 Cartwright Ave
North Hollywood, CA 91606

Vanderhorst Brothers Inc.
1715 Surveyor Avenue
Simi Valley, CA 93063

Velazquez Carlos
8414 Orion Ave #201
North Hills, CA 91343

Vescio Manufacturing
14002 Anson Avenue
Santa Fe Springs, CA 90670

Walter
N22 W23977 Ridgeview Parkway West
Waukesha, WI 53188

Whippany Actuation Systems
110 Algonquin Parkway
Whippany, NJ 07981

Hembrug BV
H Figeeweg 1 a+b
2031 BJ Haarlem
The Netherlands

Kenbil Engineering
2900 Adams St
Riverside, CA. 92504

Q-Plus Labs
13765 Alton PKWY Unit E
Irvine, CA. 92618

Advance Business Innovations (ABI)
6900 Owensmouth Ave.
Canoga, CA. 91303

Agie  Charmilles/GF Machining
62129 Collections Center Dr.
Chicago, IL 60693-0621

All Safe Electric
7057 Canoga Ave
Canoga Park, CA. 91303

Bodycote Huntington Park
3370 Benedict Way
Huntington Park, CA. 90255

Earle M. Jorgensen
P.O. Box 846027
Los Angeles, CA. 90084-6027

Pacific Forge
10641 Etiwanda Ave.
Fontana, CA. 92337

Pacific Metal Stamping
28415 Witherspoon Parkway
Valencia, CA. 91355

PTC Inc.
121 Seaport Blvd.
Boston, MA 02210

World Wide Hone
12990 Branford St. Unit K
Pacoima, CA. 91331